JOHN W. HUBER, United States Attorney (#7226)
MICHAEL GADD, Special Assistant United States Attorney (#13704)
VERNON G. STEJSKAL, Assistant United States Attorney (#8434)
KENT A. BURGGRAAF, Special Assistant United States Attorney (#13044)
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682
Email: michael.gadd@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> AARON MICHAEL SHAMO, <br><br> Defendant. | Case No. 2:16-cr-631DAK <br><br> NOTICE RELATING TO EXPERT TESTIMONY PURSUANT TO Fed.R.Crim.Pro. 16(a)(1)(G) AND Fed.R.Evid. 702 <br><br><br> Judge Dale A. Kimball |

The United States of America, by and through the undersigned Special Assistant United States Attorney, and pursuant to Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure and Rule 702 of the Federal Rules of Evidence, hereby provides to the defendant the following notice relating expert testimony the United States may offer in the trial of this case. The United States hereby offers this notice regarding the potential expert testimony of Retired Special Agent Jeffrey R. Bryan of the DEA.  The summary of the testimony of these individuals and the basis for the same is listed below.

**A.** **Rule 16(a)(1)(G) Summaries**: The United States may offer expert testimony on the following subjects:

1

*Illegal Drug Trafficking Illegal Drug Manufacturing, and Money Laundering*.   The United States will offer expert testimony from Retired Special Agent Jeffery R. Bryan of the Drug Enforcement Administration (DEA) regarding techniques, modes, and methods by which manufacturers and traffickers of controlled substances conduct business, including acquisition of inputs and manufacturing paraphernalia, online sales, distribution, methods of packaging drugs for shipment, methods of shipping controlled substances, and the valuation of controlled substances.

Special Agent Bryan's testimony will be that drug trafficking organizations that sell controlled substances online must acquire or manufacture controlled substances. He will testify concerning the process and methods used to acquire inputs to produce controlled substances in pill or tablet form as well as the process, requirements, and paraphernalia required to manufacture controlled substances in pill or tablet form. He will testify concerning the use of nominees and straw purchasers, as well as nominee addresses, in acquisition of inputs and paraphernalia.

Special Agent Bryan will testify about the process of manufacturing controlled substances, specifically by pressing controlled substances into pill or tablet form. He will testify concerning the imprints pressed into controlled substances and how appearance generally, and imprint specifically, affects illicit market value for manufactured controlled substances. He will testify concerning some of the risks to health associated with manufacturing controlled substances, specifically Fentanyl. He will testify about quality control methods employed by illicit manufacturers of controlled substances, including testing on third-parties.

Special Agent Bryan's testimony will be that online traffickers of controlled substances

prefer to ship the controlled substances to customers within the United States using the United States Postal Service because government officials need a search warrant to open packages in the custody of the USPS. His testimony will be that shippers take efforts to package the controlled substances in a manner that will prevent detection by law enforcement and protect pills and tablets from breaking. He will testify about methods online drug trafficking organizations employ to disguise their shipments and insulate themselves from detection from law enforcement, including the use of false invoices, false return addresses, and decoy contents such as candy, birthday cards, other perishable food items, or sex toys.

     Special Agent Bryan's testimony will be that manufactured controlled substances have established monetary values, and that the basis of these values are derived through a variety of investigative techniques, including the purchase of manufactured controlled substances using informants and the debriefing of informants and cooperating defendants. His testimony will be that the unit value of manufactured controlled substances can vary by geographic location and between wholesale and retail levels. His testimony will further be that counterfeit controlled substances and fake controlled substances have a value that is close to their respective legitimate controlled substances, and that value is affected by the how closely a fake or counterfeit controlled substance matches the legitimate controlled substance.

     His testimony will also concern acquisition methods, payment methods, record keeping, the use of phones and vehicles to facilitate trafficking in controlled substances, the modus operandi of traffickers who manufacture or sell controlled substances, organizational structure, and relationships between drug trafficking organizations.

     His testimony, with respect to payment methods and modes, will discuss how manufacturers and distributors pay their suppliers to keep their organizations operating.

Manufacturers and online traffickers make payment by depositing funds in bank accounts for suppliers or their nominees, use nominees to conduct financial transactions on their behalf, and send funds through wire remitter services. His testimony will be that such transactions are done to promote the drug dealing business and to conceal the nature, location, source, and ownership of the funds.

Special Agent Bryan will testify that manufacturers and traffickers of controlled substances frequently use co-conspirators or nominees to conduct financial transactions with drug proceeds to conceal and disguise the true owner of the funds—the drug trafficker or manufacturer. Such nominee or third-party transactions, he will testify, are also done in an effort to thwart law enforcement, keep transactions out of the drug trafficker's name or address, and to avoid getting caught.

Special Agent Bryan will testify that transporting cash and making hand-to-hand payments is a frequent method of payment because it avoids creating a paper trail and allows for the transfer of large amounts of proceeds. Special Agent Bryan will testify that traffickers often use banks to facilitate the payment of proceeds to suppliers when there is great distance between supplier and dealer or when traffickers or suppliers seek a fast way to transfer proceeds. Special Agent Bryan will also testify that manufacturers and traffickers will use payment services such as Venmo to transfer proceeds to con-conspirators, nominees, or suppliers.

Special Agent Bryan will testify that traffickers of controlled substances frequently use wire remitter services because, like depositing money into bank accounts, wire transfers are a fast way to transfer money. Wire transfers can also be sent to locations that are open for business outside of normal bank hours.

Special Agent Bryan will testify concerning the nature of conspiracies to commit drug

offenses or money laundering offenses. Specifically, he will testify that charter members of drug trafficking and money laundering conspiracies rarely memorialize in writing their agreement, understanding, or respective roles. Special Agent Bryan will also testify about how various financial transactions affect interstate commerce.

Special Agent Bryan's testimony will also discuss the use of the above-mentioned techniques, modes, and methods by Aaron Shamo and his coconspirators.

**B.** **Expert Qualifications**: Rule 702 of the Federal Rules of Evidence provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.[1]

The Committee Note to the rule provides that "if the witness is relying solely or primarily on experience, then the witness must explain how the experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."[2]

The United States makes the following proffer to satisfy the requirement of Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure that the summary of expert testimony provided by the government "describe the witnesses' opinions, the bases and reasons for those opinions, and the witnesses' qualifications."[3] The Court has discretion in how it makes its

---

1  FRE 702.
2  FRE 702,
3  FRCrimP 16(a)(1)(G).

reliability determination.[4] The Government suggests this proffer should suffice; this is not a close call.

The United States has identified Special Agent Bryan as an expected expert witness in this case in the areas of illegal drug trafficking, illegal drug manufacturing, and money laundering.   He is qualified as follows:

Retired Special Agent Bryan served as a Special Agent with the DEA for over twenty years.   His curriculum vitae is attached herewith as Attachment A.   He was most recently assigned to the Salt Lake City District Office, where he worked on the Tactical Diversion Squad—a group tasked with investigating the diversion of prescribed, controlled substances and the manufacture and distribution of fake and counterfeit controlled substances in pill and tablet forms. Special Agent Bryan's prior duties included the investigation of illicit pill pressing. His duties included investigative analysis of current and historical drug matters, liaising with drug investigative agencies for state and local law enforcement as their investigations related to possible violations of the controlled substances laws of the United States, and coordination of local, state, and federal resources to investigate, disrupt and dismantle organizations engaged in manufacturing and distributing controlled substances.

Special Agent Bryan's training and experience, which he gained prior to the investigation of this case, was provided by the DEA Academy, other law enforcement-sponsored analytical training, and on-the-job training related to the recognition of illegal drugs, drugs and drug paraphernalia, and the investigation of drug trafficking and drug manufacturing offenses and offenders.

DEA Academy instruction included class work and practical exercises in surveillance and

---

4 See United States v. Velarde, 214 F.3d 1204, 1208-09 (10th Cir. 2000)

counter-surveillance techniques, the use and deployment of confidential informants and undercover agents, the execution of search warrants and the collection and analysis of any evidence obtained through the search warrants, and the use of electronic monitoring and recording devices.

On-the-job training and experience has included hundreds of investigations of drug offenses and arrests made for illegal drug possession, manufacturing, and distribution. On-the-job training and experience has also included extensive experience in identifying drug trafficking and manufacturing techniques and other modes and methods of operation used by DTOs, including methods of transportation, shipment, packaging, concealment, distribution, valuation, and sourcing. Special Agent Bryan has experience investigating DTOs that manufacture or traffic Fentanyl, Alprazolam, methamphetamine, heroin, cocaine, and other illegal drugs.

In addition to his own personal experience, Special Agent Bryan has relied on information and experience collectively derived from other investigations conducted by the Drug Enforcement Administration and the FBI in Utah and elsewhere. This information includes the collective, cumulative experience of these agencies in the methods, modes, and techniques used by drug manufacturing organizations and DTOs.

RESPECTFULLY SUBMITTED this 26th day of November, 2016.

JOHN W. HUBER
United States Attorney

 */s/Michael Gadd*
MICHAEL GADD
Special Assistant United States Attorney