Gregory G. Skordas (#3865)
Kaytlin V. Beckett (#16257)
SKORDAS & CASTON, LLC
560 South 300 East Suite 225
Salt Lake City, UT 84111
Telephone: (801) 531-7444
Facsimile: (801) 665-0128
gskordas@schhlaw.com
kbeckett@schhlaw.com

Daryl P. Sam (#8276)
Daryl P. Sam, PLLC
5955 South Redwood Road, Suite 102
Salt Lake City, Utah, 84123
Telephone: (801) 506-6767
Fax: (801) 386-5476
daryl.sam@gmail.com
Attorneys for Defendant Aaron Michael Shamo

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AARON MICHAEL SHAMO, et. al.,<br><br>Defendant. | **RESPONSE TO MOTION IN LIMINE FOR ORDER PROHIBITING THE PARTIES FROM RAISING THE DEFENDANT'S POTENTIAL SENTENCE**<br><br>Case No. 2:16-CR-00631 DAK<br><br>Judge Dale A. Kimball |

Aaron Michael Shamo, through his counsel, hereby moves the Court to enter an order denying Plaintiff's Motion in Limine Prohibiting the Parties from Raising Defendant's Potential Sentence. In support Mr. Shamo alleges as follows:

## STATEMENT OF RELEVANT FACTS

1.      On or about November 22, 2016, Aaron Shamo was arrested for his alleged involvement with an online Drug Trafficking Organization (DTO). Mr. Shamo has remained in custody since this arrest.

2.       On December 6, 2016, Mr. Shamo was indicted on a single count of Possession of fentanyl with intent to distribute in violation of 21 U.S.C. §841(A)(1).

3.       After the initial arrest, law enforcement identified multiple alleged co-conspirators, including, but not limited to, Drew Crandall, Katie Bustin, Alex Tonge, Sean Gygi, Mario Noble, and Luke Paz.

4.       On May 31, 2017, The Government filed a superseding indictment against the above-named parties, with the exception Luke Paz.

5.       That Superseding Indictment charged the parties as follows:

   a.   Mr. Shamo with one count of a continuing criminal enterprise, in violation of 21 U.S.C. §848; three counts of aiding and abetting importation of a controlled substance, in violation of 21 U.S.C. § 952; one count of Possession of fentanyl with intent to distribute, in violation of 21 U.S.C. §841(A)(1); one count of manufacture of alprazolam, in violation of 21 U.S.C. §841(A)(1); two counts of knowing and intentional adulteration of drugs while held for sale, in violation of 21 U.S.C. § 331(k) & 333(b)(7); one count of use of the U.S. Mail in furtherance of a drug trafficking offense, in violation of 21 U.S.C. § 843(b); one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h); one count of money laundering concealment, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and one count of engaging in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. § 1957(a).

   b.   Crandall, Bustin, Tonge, Noble, Gygi with one count of conspiracy to distribute fentanyl in violation of 21 U.S.C. § 846 & 841(A)(1); and one count of conspiracy to distribute alprazolam in violation of 21 U.S.C. § 846 & 841(A)(1).

   c.   Mr. Gygi was also charged with one count of aiding and abetting importation of a controlled substance, in violation of 21 U.S.C. § 952; and one count of use of the U.S. Mail in furtherance of a drug trafficking offense, in violation of 21 U.S.C. § 843(b).

   d.   Ms. Bustin and Ms. Tonge were also charged with one count of possession of fentanyl with intent to distribute, in violation of 21 U.S.C. §841(A)(1); one count of use of the U.S. Mail in furtherance of a drug trafficking offense, in violation of 21 U.S.C. § 843(b); and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).

      e.  Mr. Crandall was also charged with one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).

6.      Mr. Shamo has never been offered any sort of plea in this matter.

7.      Mr. Shamo agreed to an early forfeiture of assets in order to allow the Government to auction off numerous bitcoin/bitcash e-wallets while such e-currency was at a high point. The Government received several million dollars in forfeiture as a result of Mr. Shamo's concession.

8.      On April 25, 2018, the Government separately charged Luke Paz by way of Felony Information with his alleged involvement in the DTO.

9.  The felony information charged Mr. Paz with the following:

      a.  One count of conspiracy to manufacture fentanyl, in violation of2 1 U.S.C. § 846 & 841(A)(1); two counts of knowing and intentional adulteration of drugs while held for sale, in violation of 21 U.S.C. § 331(k) & 333(b)(7); and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).

10.     When Mr. Paz was ultimately indicted, 18 months after the arrest of Mr. Shamo, he was found to be in possession of several hundred thousand dollars from his alleged involvement in the DTO.

11.     On May 14, 2018, Mr. Noble plead guilty to Conspiracy to Distribute Fentanyl and Conspiracy to Distribute Alprazolam.

12.     On June 7, 2018, Katie Bustin and Alex Tonge plead guilty to Conspiracy to Distribute Fentanyl, Conspiracy to Distribute Alprazolam, Possession of Fentanyl with Intent to Distribute, Use of the Mail in Furtherance of Drug Trafficking Offense, and Conspiracy to Commit Money Laundering.

13.     On June 7, 2018, Sean Gygi plead guilty to Conspiracy to Distribute Fentanyl, Conspiracy to Distribute Alprazolam, Aiding and Abetting the Importation of a Controlled Substance, and Use of the U.S. Mail in furtherance of a Drug Trafficking Offense.

14.     In early 2018, Government's Counsel, Michael Gadd, indicated that the Government would likely be seeking a superseding indictment against Mr. Shamo, Mr. Crandall, and Mr. Paz to include a count of aiding and abetting importation of a controlled substance resulting in death, in violation of 21 U.S.C. § 841(a)(1). Mr. Gadd indicated that the reason the Government had not yet sought the indictment was due to ongoing negotiations with Mr. Crandall and Mr. Paz who did not want to be indicted on that charge.

15.     Mr. Shamo's counsel engaged in multiple negotiations with the Government believing those negotiations were in good faith, hoping those negotiations would result in a sentence commensurate with what it appeared Mr. Crandall and Mr. Paz would receive.

16.     On October 17, 2018, Mr. Crandall plead guilty to Conspiracy to Distribute Fentanyl, Conspiracy to Distribute Alprazolam, and Conspiracy to Commit Money Laundering.

17.     October 18, 2018, the Government sought a superseding indictment against Mr. Shamo charging him with an additional count of aiding and abetting importation of a controlled substance resulting in death, in violation of 21 U.S.C. § 841(a)(1).

18.     On December 10, 2018, Luke Paz plead guilty to Conspiracy to Manufacture a Controlled Substance and two counts of Knowing and Intentional Adulteration of Drugs While Held for Sale.

19.     The Government has also indicated it believes it could have obtained the same indictment for Continuing Criminal Enterprise and Aiding and Abetting Importation of a Controlled Substance Resulting in Death against Mr. Paz and Mr. Crandall.

20.     None of the co-conspirators have been sentenced as the Government intends to call them as witnesses in the case against Mr. Shamo and their sentencings have been postponed until such time.

21.     The Government, however, has indicated it believes Mr. Paz will ultimately be sentenced to a term of incarceration of about 20-25 years and Mr. Crandall will receive a little less time than that of Mr. Paz. The Government is desirous of obtaining a Life Sentence for Mr. Shamo in order to increase the sentences of the other co-conspirators.

22.     Attached as Exhibit A, is a non-exhaustive list of the statements of co-conspirators which specifically demonstrate that Mr. Shamo was not the mastermind behind the alleged DTO, Mr. Shamo was not the party capable of organizing and executing all of the moving parts of the alleged DTO, and Mr. Shamo did not have the ability or desire to manufacture fentanyl which is the basis of the Continuing Criminal Enterprise Charge with the mandatory life sentence attached.

23.     The Government is now seeking an order prohibiting Mr. Shamo from examining before a jury clear sentencing disparities and inconsistencies in the Government's case and the culpability of the co-conspirators in this matter.

## ARGUMENT

The Court should deny the Government's motion. The Government seeks to limit Mr. Shamo's ability to adequately and accurately cross-examine and confront the witnesses against him. The Government's argument rests solely on a concern that should the jury hear the disparities as outlined above it "will lead to jury nullification." Motion in Limine at p. 5 & 6. Mr. Shamo should be allowed inquiry into the charges and potential sentences of the alleged co-conspirators for multiple reasons. First, the conduct of alleged co-conspirators is relevant and

intrinsic to the elements of the Continuing Criminal Enterprise and conspiracy charges. Second, the natural bias of the co-conspirators who stand to benefit substantially from testifying against Mr. Shamo is relevant and probative, especially so in light of their statements regarding Mr. Shamo's actual role in the alleged conspiracy as outlined in Exhibit A. Lastly, Mr. Shamo is not intentionally seeking jury nullification despite the Government's concerns.

The Government makes a cursory reference to Rules 401, 402, and 403 of the Rules of Evidence, but fails to apply those rules to the issues with the exception of cursory, conclusory statements. The Government's concern about jury nullification is a direct result of their improper and disparate handling and treatment of the defendants in this case, not the fault of Mr. Shamo exercising his right to confront and cross-examine the witnesses against him. Importantly, the Government has not cited a single case or rule that precludes Mr. Shamo the opportunity to cross-examine the witnesses, including their conduct, the roles in the alleged conspiracy, and their favorable plea agreements.

Rule 401 defines what is relevant evidence noting, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence, (b) the fact is of consequence in determining the action." Rule 402 allows for the admission of relevant evidence absent some other showing. Rule 403 holds that a Court may exclude relevant evidence if its probative value is substantially outweighed by unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. None of these rules work to prohibit Mr. Shamo's cross-examination of witnesses on the exact issues they will be testifying to or to inquire into issues pertinent to the theory of his defense; rights afforded him by the United States Constitution.

The inquiry into the conduct and charges of the co-conspirators is relevant and intrinsic to the charged offenses. The Continuing Criminal Enterprise charge requires a showing of, among other things, Mr. Shamo's role in the organization relative to other co-conspirators, the amount of money coming into the conspiracy, and the amount of drugs being distributed by the conspiracy. 21 U.S.C. § 848 (b). If the Government cannot establish that Mr. Shamo was a principal and the amount of drugs distributed attributable to Mr. Shamo meets a certain threshold or the amount of money coming into and attributable to the conspiracy, then Mr. Shamo cannot be sentenced to a term of life imprisonment. Whether or not Mr. Shamo controlled and organized the actions of the co-conspirators is an issue intrinsic to the Continuing Criminal Enterprise, which requires a showing that his conduct was in concert with five or more persons. *Id.* at (c). In short, the roles, conduct, and independent acts of the co-conspirators is relevant as contemplated by Rule 401. It is admissible as outlined in Rule 402.

The potential sentences and charges against the co-conspirators are also relevant and admissible. Namely, the Government has acknowledged the possibility of, and Exhibit A outlines, that Mr. Shamo did not in fact act in a manner as culpable as Mr. Crandall or Mr. Paz in certain areas pertaining to the CCE count. The Government has acknowledged, and Exhibit A outlines, that Mr. Crandall and Mr. Paz could have been, and indeed almost were, both indicted on the death resulting count. The choice not to indict Crandall and Paz on that particular charge was the impetus behind both individuals entering guilty pleas to all pending charges against them, agreeing to testify against Mr. Shamo, and receiving heavily reduced sentences despite the greater or equal culpability of both Crandall and Paz. By acknowledging on multiple occasions that the Government was delaying seeking a new indictment including the death resulting count because Crandall and Paz did not want to be charged with that particular offense the Government

has made the disparate charging and sentencing relevant and admissible as to the sentencing and plea agreements of those two parties and what impact it may have on the veracity of their testimony.

The Government's contention regarding Rule 403 relies solely on a belief that mentioning the disparate charges "will lead to jury nullification." The Government is correct that Jury Nullification is not a right; Mr. Shamo is not seeking a jury instruction that allows for jury nullification as contemplated in the Government's case law. Mr. Shamo's purpose in examining this disparate treatment is multi-fold: (1) the conduct and actions of the co-conspirators is being attributed to Mr. Shamo as a result of CCE charge and by machination of a conspiracy charge, probing the degree of that conduct is integral to the defense; (2) the Government has alleged that Mr. Shamo was a principal in the DTO, but testimony of the co-conspirators will in fact establish that Mr. Shamo's was subordinate to Mr. Crandall and Mr. Paz in most aspects of the DTO; (3) the fact that these parties have pled guilty and received favorable plea agreements, pretrial release, and beneficial sentencing recommendations despite their level of culpability demonstrates significant motivation for bias and fabrication of their testimony; and (4) should the jury hear such evidence and determine that Mr. Shamo's role was in fact subordinate to those others they are allowed to make the inference that those parties not being charged with or pleading guilty to the same level of offense supports a finding that Mr. Shamo is likewise not guilty of the charged offense. This is further supported by the statements of co-conspirators outlined in Attachment A.

The Government's case law in no manner works to disqualify this line of inquiry where the Defendant is faced with the statements of co-conspirators, the Government has acknowledged similar degrees of culpability, the resulting sentence of those co-conspirators is

significantly reduced in exchange for their testimony against the defendant, and the acts and conduct of those individuals are being attributed to the defendant by virtue of the nature of the charges he is facing. Mr. Shamo is not seeking an instruction that allows the jurors to defy their oath to make a determination of guilt or innocence based on the evidence before them. Instead, Mr. Shamo is seeking to make certain the information before those jurors is complete and accurate as to each party called to testify. Limiting that information strips Mr. Shamo of the sacrosanct right to confront the witnesses brought against him, including motivations for bias and fabrication.

Wherefore, Mr. Shamo respectfully requests the Court deny the Government's motion and allow reasonable and necessary inquiry into the testimony of the co-conspirators as outlined above.

DATED this 10th day of May, 2019.

SKORDAS & CASTON, LLC


*/s/ Gregory G. Skordas*
Gregory G. Skordas

**CERTIFICATE OF SERVICE**

I hereby certify that on the May 10th, 2019, I electronically filed a true and correct copy of the

foregoing **RESPONSE TO MOTION IN LIMINE FOR ORDER PROHIBITING THE**

**PARTIES FROM RAISING THE DEFENDANT'S POTENTIAL SENTENCE**, with the

Clerk of the Court using CM/ECF system, which sent notification of such filing to the following:

> S. Michael Gadd
> mgadd@agutah.gov
>
> Vernon G. Stejskal
> Vernon.stejskal@usdoj.gov
>
> Adam S. Elggren
> Adam.elggren@usdoj.gov

> */s/ Sabrina Nielsen-Legal Secretary*
> SKORDAS & CASTON, LLC