JOHN W. HUBER, United States Attorney (#7226)
MICHAEL GADD, Special Assistant United States Attorney (#13704)
KENT A. BURGGRAAF, Special Assistant United States Attorney (#13044)
VERNON G. STEJSKAL, Assistant United States Attorney (#8434)
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682
Email: michael.gadd@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>AARON MICHAEL SHAMO,<br><br>Defendant. | Case No. 2:16-cr-00631-DAK<br><br>MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE REFERENCES TO SOME OVERDOSE DEATHS<br><br>Judge Dale A. Kimball |

    The United States, by and through Michael Gadd, Special Assistant United States Attorney, urges the Court to deny in part the defendant's motion to exclude references to some overdose deaths found in Doc. 203.[1] While the United States agrees that references to most of the overdose deaths suffered by customers of Mr. Shamo would be unfairly prejudicial, there are a few deceased customers whose deaths can be mentioned under Rule 403.

---

[1] In his motion filed as Doc. 203, the defendant also moved the Court to exclude photographs of R.K., who died from a fentanyl overdose and who is the listed victim in Count 6, Aiding and Abetting the Distribution of a Controlled Substance Resulting in Death. For clarity, the United States has responded to that request in a separate memorandum filed contemporaneously to this memorandum.

STATEMENT OF FACTS

1. The defendant and his co-conspirators manufactured Fentanyl-laced fake Oxycodone and other illicit drugs.

2. The defendant, with help from his co-conspirators, sold those drugs on the Dark Net, including on AlphaBay.

3. Once a sale was made, the defendant and his co-conspirators would package and ship drugs to their customers.

4. The defendant and his co-conspirators compiled daily (or near-daily) order sheets that listed the shipping information provided by their customers along with the product and quantity the customers ordered.

5. Many of those daily order lists were recovered by investigators.

6. The combined daily order lists have been marked as United States' proposed Exhibit 14.30; Exhibit 14.30 is 1,984 pages in length.

7. Here is a redacted snippet from proposed Exhibit 14.30, for reference:

M Box 30 - Oxycodone 30 mg X250
Sale # 3449517 - Item # 171130 - Jul 12, 2016 - 09:06 - to trustworthymoney

Postage: Priority mail - 5 days - USD 3.75
Quantity: 2

hey pharma, this is for 500 of the m boxes. i didnt see a listing for 500 theres only 250 or 1000....so i just ordered quantity 2... u usually hook it up with extras anyway so its no problem. can i get tracking on my order. thanks


sw 76th ave #
portland, oregon 97225

8. This order was for five hundred Fentanyl-laced fake Oxycodone pills, which the listing describes as "M Box 30 – Oxycodone 30 mg." The pills were ordered on July 12, 2016, by "trustworthymoney"—a drug dealer from Portland that agents subsequently identified

as J.G. The snippet includes a note from "trustworthymoney" explaining his order and asking for the ability to track the order once shipped. At the bottom of the snippet, the defendant or a co-conspirator included the name and shipping address provided to them by "trustworthymoney": A.L. on 76th Avenue in Portland.

9. Investigators have combed through more than one thousand of the 1,984 pages in Exhibit 14.30 looking for customers who have died from drug overdoses.

10. Investigators have identified more than eighty customers who died from drug overdoses.

11. The defendant is charged with Engaging in a Continuing Criminal Enterprise (Count 1), Aiding and Abetting the Distribution of a Controlled Substance Resulting in Death (Count 6), and eleven other counts.

12. Count 1, Engaging in a Continuing Criminal Enterprise, lists a series of predicate offenses, including:

- Aiding and Abetting the Distribution of Fentanyl on or about April 6, 2016, to E.B., all in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2;

- Aiding and Abetting the Distribution of Fentanyl on or about March 3, 2016, to C.V., all in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2; and

- Aiding and Abetting the Distribution of Fentanyl on or about August 3, 2016, to G.K., all in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2;

13. The three customers listed in those three predicate offenses, E.B., C.V., and G.K., all died of drug overdoses.

14. E.B. ordered forty-four Fentanyl-laced pills from Pharma-Master on April 5-6, 2016. The pills were delivered on April 13, 2016. E.B. died April 24, 2016, inside his dorm room after a night of partying. His toxicology screening showed he had Ethanol, Cocaine, Diazepam, and Fentanyl in his system at the time of his death.

15. C.V. ordered fourteen Fentanyl-laced pills from Pharma-Master. The last order was placed on March 3, 2016. C.V. overdosed and died on March 25, 2016, after using drugs with a friend in his apartment the prior evening. The friend found C.V. dead on the 25th. C.V. died with Cocaine, Fentanyl, and Alprazolam in his system.

16. G.K. ordered sixty Fentanyl-laced pills from Pharma-Master. The last order, for twenty pills, was placed on August 3, 2016. On the evening of August 12, 2016, G.K. went to party with friends, but became separated from his group. A passerby found him the following morning dead in the grass outside an apartment complex. Police officers found pills marked as if they were Oxycodone pills on G.K.'s person. G.K. died with Fentanyl, Alprazolam, and Ethanol in his system.

17. The deceased victim listed in Count 6 is R.K. Facts related to R.K.'s overdose death have been filed in a contemporaneous memorandum regarding photos from the scene of R.K.'s death and are incorporated herein by reference. R.K.'s friend and roommate, G.L., died of an overdose while this case has been pending trial.

18. The envelope of pills that killed R.K. was addressed to G.L.  G.L. and his girlfriend watched R.K. crush and snort two of the pills. G.L. rolled R.K. into the recovery position and checked on R.K. several times during the night before R.K. died. G.L. found R.K. dead the following morning.

ARGUMENT

The United States agrees that it would be unfairly prejudicial to make reference to most of the overdose deaths of the defendant's customers in order to prove the crimes charged in the Indictment. The defendant conceded in his motion that it would be proper for the United States to present evidence about R.K.'s death—the victim from Count 6. The only deceased customers in dispute are three of the customers listed in predicate offenses to Count 1—E.B., C.V., and G.K.—and G.L., who was R.K.'s roommate and friend. The United States urges the Court to deny the defendant's motion with respect to those four decedents because referring to their deaths is necessary to explain (1) why each of the three deceased customers was not interviewed by agents, and (2) why none of those four decedents are available to testify. Such testimony will not unfairly prejudice the defendant.

Rule 403 is a rule of inclusion, not of exclusion; the law favors admission of all relevant evidence. *United States v. Watson*, 766 F.3d 1219, 1241 (10th Cir. 2014)(internal citations omitted). The rule carries a strong presumption for admissibility. *United States v. Grant*, 256 F.3d 1146, 1155 (11th Cir. 2001). "Within limits delineated in the Federal Rules of Evidence, the government is entitled to introduce all relevant, probative evidence at its disposal." *United States v. Burgess,* 576 F.3d 1078, 1099 (10th Cir. 2009). Relevant evidence should seldom be excluded; the application of Rule 403 should be "cautious and sparing." *United States v. Naranjo*, 710 F.2d 1465, 1469 (10th Cir. 1983).

Evidence that damages the defendant's case is not evidence constituting unfair prejudice. *United States v. Chalan*, 812 F.2d 1302, 1308 (10th Cir. 1987). Only unfair prejudice, that is, prejudice that suggests a decision on an emotional rather than an evidentiary basis, is prohibited by the rule. *Naranjo*; *supra; United States v. Nevels*, 490 F.3d 800, 805 (10th Cir. 2007) (internal

citations omitted). "In performing the [Rule] 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Nevels*, 490 F.3d at 805.

Evidence of the death of a person involved in a drug trafficking offense is not *per se* unfairly prejudicial; references to the death can have strong probative value. In *United States v. Paredes*, the trial court allowed evidence of a courier's overdose death to be presented to the jury despite some risk the jury might improperly attribute the death to Paredes, the courier's boss. 176 F. Supp. 2d 179, 182 (S.D.N.Y. 2001). Paredes was indicted for drug trafficking conspiracy offenses; the government sought to admit evidence at trial that while bringing a load of heroin into New York from Canada, the defendant's courier overdosed on heroin and died. *Id*. at 180-182. Paredes allegedly told another co-conspirator that the courier's body should be brought back to Canada in order to prevent law enforcement detection of Paredes' drug trafficking. *Id*. at 180-81. The court reasoned that while there was some risk that the jury might react unfavorably to the proposed testimony and conjecture that Paredes was responsible for his courier's death, there was strong probative value to the evidence. *Id*. at 182. The evidence of the courier's overdose death would help prove the elements of the conspiracy counts and help corroborate the co-conspirator's statements about Paredes efforts to avoid detection. *Id*. The court determined that the probative value outweighed the risk of unfair prejudice and allowed the evidence to be presented to the jury. *Id*.

The risk of unfair prejudice was higher in *Paredes* than in this case, but the court in *Paredes* allowed the evidence of the courier's heroin-overdose death to be presented to the jury. The United States asks the Court to deny the defendant's motion as it relates to E.B., C.V., G.K., and G.L. Distribution of fentanyl to E.B., C.V., and G.K. has been charged as a predicate

6

offense to Count 1. The United States will not present evidence that the defendant's pills were the cause of death for E.B., C.V., and G.K. Nor will the United States present evidence that E.B., C.V., and G.K. died from drug overdoses.

But the United States intends to briefly ask its investigator whether she interviewed E.B., C.V., and G.K. when she investigated the defendant's distribution of Fentanyl to them. To that question, the investigator will simply respond that her investigation revealed each died on his respective date of death, and, accordingly, she did not interview E.B., C.V., or G.K. because all three died prior to the beginning of her investigation.

There is little prejudicial effect in having an investigator explain why she was prevented from conducting a full investigation. Conversely, it is highly important for the investigator to explain why she did not interview the three customers—otherwise the jury will be left to wonder why the investigation was apparently incomplete with regards to the charges that the defendant aided and abetted the distribution of Fentanyl to E.B., C.V., and G.K.

Similarly, the United States intends to elicit from G.L.'s former girlfriend that G.L. is unavailable to testify because he is dead. Because G.L. died after the conclusion of the defendant's drug trafficking, there is very little risk the jury will improperly seek to hold the defendant accountable for G.L.'s death. But without explaining why G.L. cannot testify, the jury will be left to wonder why the United States has not presented its best evidence.

The United States would not oppose a limiting instruction that informed the jury that no evidence was presented that connected the defendant with the death of E.B., C.V., G.K., or G.L. It could also explain that the only reason the jury heard testimony about each of their deaths was to explain why they were not interviewed or why they cannot testify in front of the jury.

Rule 403, which is a rule of inclusion, does not prevent the United States from eliciting testimony about why the decedents were not interviewed or cannot testify. With the United States' assurances that it will not elicit testimony or offer evidence that the three deceased customers overdosed or that the defendant's fentanyl was the cause of death, the Court should deny the defendant's motion, in part, by allowing the United States to elicit from its witnesses that (1) E.B., C.V., and G.K. were not interviewed, and that (2) E.B., C.V., G.K., and G.L. cannot testify, because they are dead.

Respectfully submitted this 10th day of May, 2019.

>JOHN W. HUBER
>United States Attorney
>
> */s/ Michael Gadd*
>MICHAEL GADD
>Special Assistant United States Attorney