JOHN W. HUBER, United States Attorney (#7226)
MICHAEL GADD, Special Assistant United States Attorney (#13704)
KENT A. BURGGRAAF, Special Assistant United States Attorney (#13044)
VERNON G. STEJSKAL, Assistant United States Attorney (#8434)
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682
Email: michael.gadd@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> AARON MICHAEL SHAMO, <br><br> Defendant. | Case No. 2:16-cr-00631-DAK <br><br> REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO MOTION FOR ORDER PROHIBITING THE PARTIES FROM RAISING THE DEFENDANT'S POTENTIAL SENTENCE <br><br> Judge Dale A. Kimball |

The United States, by and through Michael Gadd, Special Assistant United States Attorney, in reply to the defendant's memorandum in opposition (Doc. 205), urges the Court to prohibit all parties from encouraging jury nullification generally, and from encouraging it specifically by (1) mentioning to the jury, on direct or cross-examination or in argument, the defendant's potential minimum and maximum sentence; and (2) drawing comparisons between the charges faced by the defendant with those charges faced by his co-conspirators.

1. **False or Misleading Statements**

The defendant, in his memorandum in opposition, made several statements that were materially incorrect. The United States requests that the Court disregard those statements. The false or misleading statements include the following:

- "Mr. Shamo has never been offered any sort of plea in this matter." Doc. 205, at 3.

While Rule 410 generally prohibits the United States from revealing plea negotiations during trial, the rules of evidence do not apply to pre-trial motion practice regarding the inadmissibility of evidence. F. R. Evid. 1101(d). And Rule 410(b)(1) creates an exception for instances, such as this, where, in fairness, the statement ought to be considered.

Contrary to his assertion, the defendant has received a plea offer from the United States. After meeting with counsel for the defendant in a Rule 410 conference, the United States Attorney for the District of Utah personally called the defendant's lead attorney and extended a plea offer to the defendant. That call occurred on approximately November 30, 2018. The offer remains open and will not expire until May 29, 2019.

- "Mr. Shamo agreed to an early forfeiture of his assets in order to allow the Government to auction off numerous bitcoin/bitcash e-wallets while such e-currency was at a high point." Doc. 205, at 3.

The defendant did not forfeit his assets during the interlocutory sale.[1] The stipulated motion for an interlocutory sale explained that the sale was not a forfeiture by the defendant: "[t]he proceeds from any sale will be a 'substitute res' that will be subject to forfeiture in the place of the properties that are sold. The proceeds must be held in an interest-bearing account maintained by the United States pending the conclusion of the forfeiture action." Doc. 87,[2] at 5.

---

[1] The defendant challenged the administrative forfeiture of assets seized from his residence, including his BMW sedan, his pick-up truck, and more than $1.2 million in USD. But the defendant did not challenge the administrative forfeiture of his cryptocurrency and it was forfeited administratively at some point after the interlocutory sale. When the undersigned prosecutor learned the defendant had not challenged the administrative forfeiture of his cryptocurrency and the time window for making a claim was drawing to a close, he alerted counsel for the defendant in case the challenge had been overlooked.

[2] The United States sought to amend the Court's order for an interlocutory sale in Doc. 92. Doc. 92 does not indicate the interlocutory sale represented a forfeiture by the defendant.

- When Mr. Paz was ultimately indicted, 18 months after the arrest of Mr. Shamo, he was found to be in possession of several hundred thousand dollars from his alleged involvement in the DTO." Doc. 205, at 3.

Mr. Paz was charged by Felony Information on April 25, 2018. Later that summer, Mr. Paz through his attorney voluntarily surrendered the proceeds of his illegal conduct to agents during a series of interviews covered by a standard proffer agreement.

- "The Government has also indicated it believes it could have obtained the same indictment for Continuing Criminal Enterprise …against Mr. Paz and Mr. Crandall." Doc. 205, at 4.

The undersigned counsel for the United States has never indicated a belief that the grand jury would have returned an indictment against Paz or Crandall for engaging in a continuing criminal enterprise (CCE). To his knowledge, no other representatives of the United States have offered that opinion. This mistaken argument by the defendant has been corrected previously by the United States. See Doc. 176, at 17-18.

- "The Government, however, has indicated it believes Mr. Paz will ultimately be sentenced to a term of incarceration of about 20-25 years and Mr. Crandall will receive a little less time than that of Mr. Paz. The Government is desirous of obtaining a Life Sentence for Mr. Shamo in order to increase the sentences of the other co-conspirators." Doct. 205, at 5.

During the Rule 410 conference mentioned above, the undersigned counsel for the United States was asked by counsel for the defendant whether he thought the defendant's estimated sentence for Mr. Paz—twenty to twenty-five years—was an accurate projection. The question was asked during a pitch by defense counsel for a plea agreement that recommended a stipulated sentence of twenty-five years. To counsel's question, the undersigned attorney for the United States briefly agreed in an effort to extend professional courtesy to the defendant's counsel by not derailing his plea negotiation pitch by engaging in a protracted debate about the likely sentence a co-conspirator like Mr. Paz might receive, given any number of currently unknown

3

variables, such as the extent of cooperation Mr. Paz might be able to provide. The United States does not presume to know what sentence the Court might impose. That figure, twenty to twenty-five years, came from the defense's pitch for a favorable plea resolution.

The United States has not and would never seek a life sentence against a defendant in order to potentially pressure the Court to increase the length of sentences imposed upon co-conspirators. Any suggestion to the contrary is false.

Congress determined that for some crimes—the worst crimes—defendants should face a life sentence. But even now the United States has held open its plea offer for the defendant. The defendant's suggestion that the United States is pursuing his case for inappropriate reasons is without merit.[3]

- "Namely, the Government has acknowledged the possibility…that Mr. Shamo did not in fact act in a manner as culpable as Mr. Crandall or Mr. Paz in certain areas pertaining to the CCE count." Doc. 205, at 7.

The United States has never indicated the defendant was less culpable than either Mr. Paz or Mr. Crandall. Everyone in the criminal enterprise had a role to play, but Mr. Shamo is most culpable. Throughout the case, the United States has maintained that culpability follows the following chart of charged co-conspirators, with the most culpable co-conspirator at the top.

---

[3] The United States has likewise previously explained that Mr. Shamo was afforded the same opportunity as Mr. Paz and Mr. Crandall to plead guilty and avoid the potential of the grand jury returning a death-resulting count. See Doc. 176 at 18.



- "The choice not to indict Crandall and Paz on that particular charge was the impetus behind both individuals entering guilty pleas to all pending charges against them, agreeing to testify against Mr. Shamo, and receiving heavily reduced sentences, despite the greater or equal culpability of both Crandall and Paz."

Mr. Crandall and Mr. Paz have not been sentenced; it seems premature to argue they received heavily reduced sentences. And, as stated above, neither Mr. Paz nor Mr. Crandall are equally culpable with the defendant.

These statements by the defendant are not all the objectionable statements in his response or in his attachment, which contains quotations taken out of the context in which they were spoken. But the United States will not address the remaining statements. In many instances, the defendant presumed to know the motivations and thoughts of the United States or his co-

conspirators; the United States simply asserts that in those instances, the defendant was frequently incorrect.

2. **The defendant used permitted areas of inquiry to justify its opposition to the United States request that all parties be prohibited from impermissible areas of inquiry and argument.**

In his response, the defendant used several areas of permissible inquiry and argument to oppose the United States' request that both parties be prohibited from engaging in trial strategies that could lead to jury nullification. The United States' request seeks to prevent the jury reaching a conclusion based upon improper grounds, namely (1) consideration of the defendant's potential minimum and maximum sentence, and (2) comparing the charges faced by the defendant with those charges faced by his co-conspirators.

Here are the areas of inquiry or argument the defendant raised or alluded to in his memorandum, sorted by whether each is permitted or not. The page number referenced at the end of each area of inquiry or argument corresponds to the defendant's response.

| Permitted | Not Permitted |
|---|---|
| Culpability of co-conspirators (p. 5) | The clear sentencing disparities between co-conspirators (p. 5) |
| Charges and potential sentences for testifying co-conspirators for purposes of impeachment (p.5) | Charges (or lack thereof) and potential sentences of non-testifying co-conspirators (p.5) |
| Conduct of co-conspirators (p.6) | Charges and potential sentences for testifying co-conspirators for purposes other than impeachment (p.5) |
| Roles of co-conspirators (p.6, 7) | Improper and disparate handling and treatment of defendants in this case (p. 6) |
| Independent acts of co-conspirators (p. 7) | Disparate charging and sentencing with respect to Mr. Paz and Mr. Crandall and Count 1 CCE (p. 7-8) |
| Favorable plea agreements [for impeachment] (p. 7) | If jury determines that the defendant is less culpable than Mr. Paz or Mr. Crandall, then the defendant is not guilty of CCE because neither Paz nor Crandall were charged with CCE (p. 8) |
| Whether the defendant controlled and organized the actions of his co-conspirators (p.7-8) | |
| Conduct of co-conspirators attributed to the defendant under CCE or conspiracy offenses (p. 8) | |
| Role of the defendant with respect to Mr. Paz or Mr. Crandall (p.8) | |
| Plea and cooperation agreements [for impeachment] (p. 8) | |
| Whether Mr. Paz or Mr. Crandall pleaded guilty in part to avoid being charged by the grand jury with Distribution of a Controlled Substance Resulting in Death. (p. 7-8) | |

**a. The defendant's potential sentence cannot be considered by the jury.**

The defendant's response does not contain a single citation to case law. Not one. And the defendant did not address head on the Supreme Court case law, Tenth Circuit case law, other

persuasive case law, and Tenth Circuit pattern jury instructions relied upon by the United States in making its request.

The law is clear. Jury nullification is antithetical to our system of justice and to the rule of law. The jury should not learn the potential sentence faced by the defendant. *Shannon v. United States*, 512 U.S. 573, 579 (1994). In the Not-Permitted column, the defendant has several areas of inquiry or argument that run afoul of case law that forbids the jury from hearing the potential sentence faced by a defendant.

| Not Permitted |
|---|
| The clear sentencing disparities between co-conspirators (p. 5) |
| Charges (or lack thereof) and potential sentences of non-testifying co-conspirators (p.5) |
| Charges and potential sentences for testifying co-conspirators for purposes other than impeachment (p.5) |
| Improper and disparate handling and treatment of defendants in this case (p. 6) |
| Disparate charging and sentencing with respect to Mr. Paz and Mr. Crandall and Count 1 CCE (p. 7-8) |

The Court should preclude the defendant from arguing or eliciting testimony about any of these topics because it will lead to jury nullification.

**b. The jury cannot draw comparisons between co-conspirators' charges.**

It is inappropriate to argue or elicit testimony that compares the charges faced by one co-conspirator against charges faced by another. On this issue the defendant did not cite to any case law. But the law is clear. The jury cannot consider whether anyone not on trial should have been charged for the crime charged. 10th Cir. Pattern Instruction 1.19 (2018).

In the Not-Permitted column, the defendant has several areas of inquiry or argument that run afoul of the law, which forbids the jury from considering whether anyone not on trial should

8

have been charged for Engaging in a Continuing Criminal Enterprise (Count 1) or Distribution of a Controlled Substance Resulting in Death (Count 6).

| Not Permitted |
|---|
| Charges (or lack thereof) and potential sentences of non-testifying co-conspirators (p.5) |
| Charges and potential sentences for testifying co-conspirators for purposes other than impeachment (p.5) |
| Improper and disparate handling and treatment of defendants in this case (p. 6) |
| Disparate charging and sentencing with respect to Mr. Paz and Mr. Crandall and Count 1 CCE (p. 7-8) |
| If jury determines that the defendant is less culpable than Mr. Paz or Mr. Crandall, then the defendant is not guilty of CCE because neither Paz nor Crandall were charged with CCE (p. 8) |

The Court should preclude the defendant from arguing or eliciting testimony about any of these topics because it will lead to jury nullification.

### 3. Conclusion

In conclusion, the United States requests that the Court enter an order forbidding all parties from:

1. encouraging jury nullification generally;
2. mentioning to the jury, on direct or cross-examination or in argument, the defendant's potential minimum and maximum sentence for Counts one and six;
3. drawing comparisons between the charges faced by the defendant with those charges faced by his co-conspirators;
4. commenting upon potential sentences for those counts covered by the statements-in-advance-of-plea for co-conspirators for purposes other than impeachment; and
5. eliciting testimony or making arguments on the following impermissible topics:

| Not Permitted |
|---|
| The clear sentencing disparities between co-conspirators (p. 5) |
| Charges (or lack thereof) and potential sentences of non-testifying co-conspirators (p.5) |
| Charges and potential sentences for testifying co-conspirators for purposes other than impeachment (p.5) |
| Evidence of improper and disparate handling and treatment of defendants in this case (p. 6) |
| Disparate charging and sentencing with respect to Mr. Paz and Mr. Crandall and Count 1 CCE (p. 7-8) |
| If jury determines that the defendant is less culpable than Mr. Paz or Mr. Crandall, then the defendant is not guilty of CCE because neither Paz nor Crandall were charged with CCE (p. 8) |

Respectfully submitted this 17th day of May, 2019.

                                              JOHN W. HUBER
                                              United States Attorney

                                              */s/ Michael Gadd*
                                              MICHAEL GADD
                                              Special Assistant United States Attorney