Gregory G. Skordas (#3865)
Kaytlin V. Beckett (#16257)
**SKORDAS & CASTON, LLC**
560 South 300 East Suite 225
Salt Lake City, UT 84111
Telephone: (801) 531-7444
Facsimile: (801) 665-0128
gskordas@schhlaw.com
kbeckett@schhlaw.com

Daryl P. Sam (#8276)
Daryl P. Sam, PLLC
5955 South Redwood Road, Suite 102
Salt Lake City, Utah, 84123
Telephone: (801) 506-6767
Fax: (801) 386-5476
daryl.sam@gmail.com

Attorneys for Defendant Aaron Shamo

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> AARON MICHAEL SHAMO, et. al., <br><br> Defendant. | **MOTION TO CONTINUE FOR WILLFUL FAILURE TO PROVIDE BRADY/GIGLIO MATERIAL** <br><br> Case No. 2:16-CR-00631 DAK <br><br> Judge Dale A. Kimball |

Aaron Michael Shamo, through his counsel of record, hereby moves the Court to enter an order to continue the trial currently scheduled to begin June 17, 2019, based on the Government's willful failure to provide *Brady/Giglio* material in advance of trial, pursuant to the Due Process Clause of the U.S. Constitution, and Def. R. Crim P. 16. In support, the Defendant alleges as follows:

## STATEMENT OF RELEVANT FACTS

1.  In the Government's prior Notifications of Compliance with Discovery Requests, the Government noted, "The United States continues to make available forensic data from seized electronic devices. Parties who seek to obtain their own copy of the forensic data have been asked to provide and 8TB hard drive and a 3TB hard drive to the United States Attorney's Office."

2.  In that regard, Defense Counsel was aware of the existence of 11 TBs of Discovery prior to November 2018.

3.  In November of 2018, Defense Counsel learned the Government had in its possession, the seized electronic devices of alleged co-conspirator, Jonathan Luke Paz.

4.  On November 26, 2018, Defense Counsel provided the US Attorney's Office with the hard drives as requested above. (See Attachment A, Messenger Receipt for hand delivery of hard drives).

5.  A week later, Defense Counsel contacted the US Attorney's Office to receive a timeline of the data transfer. Defense Counsel was informed the US Attorney's Office had misplaced the provided hard drives.

6.  The US Attorney's Office insisted they had never received the hard drives and Defense Counsel must have sent them to the wrong address.

7.  On December 7, 2018, after being provided a delivery receipt for those hard drives, the US Attorney's Office acknowledged they had misplaced and subsequently found the hard drives. (See Attachment B, Email from Michael Gadd).

8.  The US Attorney's Office acknowledged that the transfer of that Data would take a significant amount of time.

9.   On or about December 21, 2018, the US Attorney's Office returned the hard drives provided by Defense Counsel and two other hard drives.

10. The US Attorney's Office explained that they in fact had obtained and now provided an estimated 20+TBs of electronic data.

11. Defense Counsel's intention in having computer data reviewed was to specifically have the computers and electronics of Drew Crandall and Luke Paz reviewed.

12. In numerous correspondence and conversations with the Government, Defense Counsel intimated a concern that Mr. Paz was in fact the party responsible for mixing and pressing all of the fentanyl alleged to have been produced in this scheme.

13. Specifically, Defense Counsel relayed a belief that Mr. Paz would have in his possession a "ledger" type of document that outlined the number of pills he had pressed and an accounting of all of the money he in fact received and/or believed he was owed for being the sole party responsible for pressing pills.[1]

14. Defense Counsel copied the data from the Government's two extra hard drives onto their devices. Defense Counsel's legal assistant compared the data transferred from the Government's hard drives before those hard drives were returned to the US Attorney's Office; specifically noting the data from Mr. Paz's computer. The data transferred matched what was provided on the Government's hard drives and those were subsequently retrieved by the US Attorney's Office from Defense Counsel's office in early 2019.

---

[1] Importantly, Mr. Shamo is the only defendant/co-conspirator remaining in this matter. Every other party has plead and is awaiting sentencing until after testifying in the trial against Mr. Shamo. The Government has also acknowledged that the requisite conduct of co-conspirators, Drew Crandall and Jonathan Luke Paz, was on par with the conduct for which Mr. Shamo is currently charged.

15. Even after receipt of the information, Defense Counsel had to get approval from the CJA Budgeting Attorney before retaining an expert on electronic data. That budget approval could not be obtained until the amount of data to be reviewed was calculated.

16. Defense asked for a continuance due to the unexpected amount of discovery before the trial. That request was supported by the Government believing the parties needed more time and there was still potential for plea negotiations.

17. The Court granted the continuance.

18. Defense Counsel had previously retained the Eide Bailly Firm to review the forensic data in this matter.

19. On more than one occasion, the Government informed Defense Counsel that there was nothing of value pulled from the devices that Defense Counsel was desirous of having reviewed, but that they understood Defense Counsel still wanted to conduct due diligence.

20. Eide Bailly provided a written estimate to process the new data in February. The CJA budgeting attorney also did not approve the Defense's request and did not notify Defense Counsel of that concern until March 2019.

21. The CJA Budgeting Attorney provided the names of two other experts but Defense Counsel did not receive any response from those proposed experts after contacting them.

22. The CJA Budgeting Attorney requested Defense Counsel coordinate with a Discovery Attorney to find another expert. The name provided from the Discovery Attorney also did not return contact.

23. In mid-March 2019 after multiple emails and attempts to find an expert that would be approved, Defense Counsel suggested the use of Eric Wheeler as a possible option knowing Trial Tech's familiarity with and reliability in the federal court system.

24. Mr. Wheeler was not approved by the CJA Budgeting Attorney until March 27, 2019. It was several days before the budget came through for Mr. Wheeler to begin working through the massive discovery.

25.  In April 2019, Eric Wheeler contacted the US Attorney's Office and requested native file versions of the electronic data. He believed he had received that from the US Attorney's Office.

26. Upon reviewing the data initially, Eric Wheeler noticed that the forensic image of one of the co-conspirator's computers was encrypted and contacted the US Attorney's Office to obtain an unencrypted version.

27. The US Attorney's Office informed Mr. Wheeler that they did not encrypt the forensic image, but it must have been encrypted by the owner of the computer.

28. Upon information and belief, the purpose of creating a forensic image of a computer hard drive is to conduct a forensic review of that device. In short, there would be no conceivable reason for the owner of the computer to create the image let alone encrypting it. As of the date of this filing, that forensic image is still encrypted and inaccessible to Defense Counsel.

29. Upon review of the Government's Proposed Exhibits, Defense Counsel noted the existence of two documents not previously disclosed or noted by the Government- a "ledger" accounting for pills made and money owing and a text message exchange allegedly between Aaron Shamo and Jonathan Luke Paz negotiating Paz's per pill payment. (See Attachment C, New Exhibits).

30. Defense Counsel inquired of the Government where these particular exhibits were in the discovery provided as they were not bates stamped like all other previous exhibits. Defense Counsel was informed they had been retrieved from Mr. Paz's Computer.

31. Defense Counsel asked Mr. Wheeler to focus his review more thoroughly on the file

labeled "Luke Paz's iMac." Mr. Wheeler informed Defense Counsel that folder was in fact nearly empty and did not contain a forensic image of the actual computer, but only contained photos, downloads, and internet bookmarks.

32. Defense Counsel and Mr. Wheeler contacted the US Attorney's Office to inquire again as to the location of those new exhibits. The Government insisted Defense Counsel must have improperly copied the electronic data when it was provided by the US Attorney's Office in December 2018/January 2019.

33. Defense Counsel and Mr. Wheeler inquired as to why those documents were not provided in the native file version as requested by Mr. Wheeler when other such data had been provided in native format.

34. The Government continued to insist the failure to have the correct data was the result of Defense Counsel's improper copying of the hard drives provided by the US Attorney's Office. The Government further insisted that the forensic images can only be copied using specific software and a verification process and not a traditional "drag/drop" or "copy/paste" method would not allow the proper copying.

35. The Government did not address the fact that every other external hard drive, forensic image, and thumb drive had copied intact using the above methods.

36. Defense Counsel compared the hard drives in their office with the data provided to Mr. Wheeler and it matched exactly.

37. The Government insisted that Defense Counsel still had the US Attorney's hard drives in their possession and should look to those for the proper files. Defense Counsel informed the Government that those hard drives had been retrieved by Michael Gadd several months earlier.

38. The Government subsequently acknowledged that they had found that hard drive in their

possession, but nevertheless insisted that Mr. Wheeler provide a new hard drive for copying of

the forensic image of Mr. Paz's iMac. This insistence seemed improper as the Government had

insisted that these hard drives (which were previously provided to Defense Counsel) had the

proper forensic images and copying such a large file size would require several days.

39. On May 21, 2019, Mr. Wheeler provided another external hard drive to the US

Attorney's Office.

40. On May 23, 2019, the US Attorney's Office contacted Defense Counsel and informed

them that the forensic image of Mr. Paz's computer was in fact separated onto three different

hard drives and the 8TB Hard drive provided by Mr. Wheeler "might" be large enough to hold

the entire image, but the copying of that forensic imaging will not be completed until some time

next week. (See Attachment D, Email Correspondence From Yvette Laughter).

## ARGUMENT

Suppression of material evidence is violative of a Defendant's constitutional rights and due

process. *Brady v. Maryland,* 373 U.S. 83 (1963); and *Giglio v. United States*, 405 U.S. 150

(1972). When the reliability of a given witness may well be determinative of guilt or innocence,

nondisclosure of evidence affecting credibility falls within this general rule. *Giglio v. United*

*States*, 405 U.S. 150, 154 (1972). *Id.* It does not matter whether the non-disclosure of the

evidence is a result of negligence or intentional conduct. *Id.* Suppression by the prosecution of

evidence favorable to an accused upon request violates due process when that evidence is

material to guilt or punishment. *United States v. Young,* 45 F.3d 1405, 1407 (10th Cir. 1995). It is

well-established that evidence of a witness's credibility or bias falls into this category of *Brady-*

*Giglio* material which the government is required to disclose. *United States v. Robinson*, 583

F.3d 1265 (10th Cir. 2009); and *United States v. Buchanan*, 891 F.2d 1436 (10th Cir. 1989). This

evidence is particularly material because the confrontation clause allows a witness' credibility be subjected to particular attack for biases or ulterior motives during cross-examination and no such meaningful cross-examination can occur where the defendant is unaware of the biases known to the government and not disclosed to the defendant. *Heinemann v. Murphy*, 326 F. App'x 455, 466 (10th Cir. 2009). Importantly, a co-defendant who testifies with only a reasonable expectation or understanding of leniency, but not a formal agreement, has an even more powerful incentive to testify falsely in order to facilitate a conviction and curry favor with a prosecutor. *Id. At 704* (for purposes of assessing credibility, absence of a formal agreement only increases significance of witness' expectation of favorable treatment) (quoting *Campbell v. Reed,* 594 F.2d 4, 7 (4th Cir. 1979)).

There is not proper precedent to allow the exclusion of delays due to willful *Brady/ Giglio* violations from the Defendant's Speedy Trial Act calculations with the exception of the time period required to complete briefing on this motion. 18 U.S.C.S §1361

## ANALYSIS

The Government has failed to provide evidence material to defense of Mr. Shamo, which necessitates a continuance that should not be excluded from the Speedy Trial calculation. Mr. Shamo's defense has rested largely on the fact that his conduct is of a lesser degree than those of certain co-conspirators; Drew Crandall and Luke Paz. This defense has been supported in previous motions by the inclusion of six pages worth of statements outlining that Mr. Shamo was not capable or competent enough to have orchestrated the alleged conspiracy. Specifically, Mr. Shamo has outlined that his role was significantly limited at the outset of the conspiracy to that of customer service and knowledge of bitcoin. The Government is fully aware that Mr. Shamo has contested he never had the chemical formula for the fentanyl-based pills and never himself

pressed a single pill containing fentanyl. That role was filled solely by Mr. Paz. Mr. Shamo did

not start the conspiracy or drug trafficking of his own accord and could not have initiated such a

task without the skills, business savvy, and knowledge of Drew Crandall. Mr. Crandall

acknowledged this in his interviews with investigators. The Government further acknowledged

that it had the ability to obtain indictments as to Mr. Paz and Mr. Crandall for the both the "death

resulting" offense and the continuing criminal enterprise offense; the latter which the

Government contends requires a mandatory life sentence and no judicial discretion to deviate

from that minimum sentence.

Mr. Paz and Mr. Crandall were not indicted on those two particular charges as a result of

very favorable plea agreements. The Government outlined for Defense Counsel their belief that

Mr. Crandall will receive a sentence in the range of 20 years; and Mr. Paz will receive a sentence

in the range of 25 years. Such sentences are significantly lower than the hardline mandatory life

sentence faced by Mr. Shamo despite overwhelming evidence to the contrary. Neither Crandall

or Paz have been sentenced and it is expected that they will not be sentenced until after Mr.

Shamo is sentenced. As of the date of this filing, Paz remains out of custody pending sentencing,

while Mr. Shamo has been in the custody of the US Marshalls since his arrest in November

2016- nearly three full years. Fully cognizant of this fact and the significant disparity, the

Government has sought an order from the court limiting Defense Counsel's ability to even

question Crandall and Paz regarding their favorable plea agreements and potential sentences.

Now, three weeks before trial, well after discovery and exhibit deadlines have lapsed, the

Government has still failed to provide Mr. Shamo with the information that is clearly available

on Paz's computer. Based on an evaluation of the non-bates stamped exhibits, it is clear that

evidence which supports a conclusion that Paz was in fact the party responsible for the pressing

and processing of all fentanyl-based pills is contained on Paz's computer. That computer, in violation of established case law, has never been provided to Defense Counsel despite repeated requests. In addition to those repeated requests, the Government has routinely implied no relevant documentation exists on that particular computer. That is clearly inaccurate as the documents recently produced are not only relevant but directly address the heart of Mr. Shamo's defense- that his conduct is not remotely close to that alleged in the indictment. That exact conduct is what subjects Mr. Shamo to a potential mandatory life sentence. There is no disagreement between the parties that the mandatory life sentence in this matter would only arise if the amount of fentanyl-based pills attributed to Mr. Shamo in fact meets the statutory threshold for such a sentence. In that regard, the evidence is material to Mr. Shamo and goes directly to the heart of Paz's credibility as a witness in this matter. That type of materiality is of the exact type contemplated by *Brady/Giglio*. This materiality is further supported by *United States v. Young*, as Mr. Shamo's role and connection to the fentanyl-based pills is the only element which potentially exposes him to a mandatory life sentence, whereas Paz and Crandall face no such harsh punishment despite the culpability of their conduct.

The Government's willful failure to deny access to that hard drive has significantly hindered Mr. Shamo's ability to prepare an adequate defense. Should the Government provide that hard drive by the estimated date (on or about May 28-29, 2019), Defense Counsel is still faced with an enormous task: (1) obtaining new budget approval for review of the 8TBs or more of data; (2) actually processing 8TBs or more of data in the intervening three weeks; and (3) making significant scheduling accommodations to  allow time to review that data in its entirety. Undoubtedly, this willful delay and continue failure to provide the requested information has prejudiced Mr. Shamo's defense by no fault of his or Defense Counsel.

WHEREFORE, Aaron Shamo, respectfully request the Court continue the matter to allow Mr. Shamo an appropriate amount of time to obtain, process, and review the improperly withheld *Brady/Giglio* material in their entirety. Due to the Government's willful conduct in failing to provide the requested information, the continued time should not be excluded from Mr. Shamo's Speedy Trial Act calculations with the exception of the time allotted for completion of briefing on this motion and entry of the Court's ruling.

DATED this 24th day of May, 2019.

SKORDAS & CASTON, LLC

*/s/ Gregory G. Skordas*
Gregory G. Skordas

*/s/ Kaytlin V. Beckett*
Kaytlin V. Beckett

*/s/ Daryl P. Sam*
Daryl P. Sam

## CERTIFICATE OF SERVICE

I hereby certify that on the May 24, 2019, I electronically filed a true and correct copy of

the foregoing **MOTION TO CONTINUE FOR WILLFUL FAILURE TO PROVIDE**

**BRADY/GIGLIO MATERIAL**, with the Clerk of the Court using CM/ECF system, which sent

notification of such filing to the following:

> S. Michael Gadd
> mgadd@agutah.gov
>
> Vernon G. Stejskal
> Vernon.stejskal@usdoj.gov
>
> Kent Burggraaf
> kburggraaf@agutah.gov

*/s/ Sabrina Nielsen-Legal Secretary*
SKORDAS & CASTON, LLC

Attachment A, Messenger Receipt for Hand Delivery of Hard Drives

# LEGAL MESSENGER INC.
## P.O. box 11101 SLC, UT 84147
### Office: (801) 521-3999  Email: lmi@xmission.com

**Billing Detail for:**

Skordas Caston & Hyde
560 S 300 E #225
Salt Lake City, UT 84102

Printed 11/30/2018

For Period  11/01/2018 to  11/30/2018

Page: 1

| Dated Order | Attorney/contact Client Reference | Comment | Court Runs Regulars   Specials | | All Others Misc. Reg/Spcl. | Totals |
|---|---|---|---|---|---|---|
| 11/06/2018 | GREG/SABRINA | 160  E 300 S @ 1006 | | | $8.00 | $8.00 |
| | MODES/REG TO THOMAS BRUNKER | | | | | |
| 11/26/2018 | GREG/SABRINA | 111 S MAIN @ 1115 | | | $8.00 | $8.00 |
| | SHAMO/REG TO US ATTY | | | | | |
| | | **Grand Totals:** | | | $16.00 | $16.00 |

This print-out is in attorney/contact order.  Print-outs are also available in dated order.  Your comments are welcome.  Thanks for using LMI.

### Final Details for Order #112-2257195-1296251

Print this page for your records.

**Order Placed:** November 21, 2018
**Amazon.com order number:** 112-2257195-1296251
**Order Total: $233.99**

## Shipped on November 22, 2018

| Items Ordered | Price |
|---|---|
| 1 of: *Toshiba HDTB330XK3CB Canvio Basics 3TB Portable External Hard Drive USB 3.0, Black*<br>Sold by: Amazon.com Services, Inc<br><br>Condition: New | $79.99 |
| 1 of: *Seagate Expansion 8TB Desktop External Hard Drive USB 3.0 (STEB8000100)*<br>Sold by: Amazon.com Services, Inc<br><br>Condition: New | $139.00 |

**Shipping Address:**

█████████████

**Shipping Speed:**
Two-Day Shipping

| | |
|---|---|
| Item(s) Subtotal: | $218.99 |
| Shipping & Handling: | $0.00 |
| | ----- |
| Total before tax: | $218.99 |
| Sales Tax: | $15.00 |
| | ----- |
| **Total for This Shipment:** | **$233.99** |
| | ----- |

## Payment information

**Payment Method:**
Visa | Last digits: ████

**Billing address**
Nora Oki
560 South 300 East
Suite 225
Salt Lake City, Utah 84111
United States

| | |
|---|---|
| Item(s) Subtotal: | $218.99 |
| Shipping & Handling: | $0.00 |
| | ----- |
| Total before tax: | $218.99 |
| Estimated tax to be collected: | $15.00 |
| | ----- |
| **Grand Total:** | **$233.99** |

**Credit Card transactions**          Visa ending in ████ November 22, 2018: $233.99

To view the status of your order, return to Order Summary.

Conditions of Use | Privacy Notice © 1996-2018, Amazon.com, Inc. or its affiliates

Attachment B, Email from Michael Gadd



**Kaytlin Beckett <kbeckett@schhlaw.com>**

## Shamo

**Daryl Sam** <daryl.sam@gmail.com>　　　　　　　　　　　　Sat, Dec 8, 2018 at 10:43 PM
To: Kaytlin Beckett <kbeckett@schhlaw.com>, lawoffice@schhlaw.com, gmena@schhlaw.com

I think I forgot to forward this email from Mike Gadd about the hard drives.

---------- Forwarded message ---------
From: **Michael Gadd** <mgadd@agutah.gov>
Date: Fri, Dec 7, 2018 at 9:37 AM
Subject: Re: Shamo
To: Laughter, Yvette (USAUT) <yvette.laughter@usdoj.gov>, Daryl Sam <daryl.sam@gmail.com>


The hard drives have been found! We'll start the data transfer.  My memory is that it takes a minute to move 11TB, but Yvette will remember better than me.

**From:** Daryl Sam <daryl.sam@gmail.com>
**Sent:** Thursday, December 6, 2018 4:17:55 PM
**To:** Laughter, Yvette (USAUT); Michael Gadd
**Subject:** Fwd: Shamo

Mike and Yvette,

Attached below is a receipt from LMI showing the hard drives were delivered to your office on 11/26 at 11:15 am. Also, attached is a receipt for the purchase of the hard drives. Apparently Yvette was out that day so the hard drives were likely given to someone else. Let me know if you are able to find them.

Thanks,
Daryl

---------- Forwarded message ---------
From: **Receptionist Skordas, Caston & Hyde** <lawoffice@schhlaw.com>
Date: Thu, Dec 6, 2018 at 4:11 PM
Subject: Re: Shamo
To: <daryl.sam@gmail.com>


Daryl,

Attached is the confirmation from LMI as well as the receipt for the hard drives. Is there anything that we can do on our end to help, or will you be handling this issue?
[Quoted text hidden]

Attachment C, New Exhibits

‹ Back

3k April 20th

3.5k April 21st

Total: 13.8k = $17,250

Paid $2500 June 4.    $14,750 owed

Paid $2500 June 10

Amzn $1000 June 10  $11,250 owed

Paid $3500 June 13.   $7,750

Amzn $200 June 13

Paid $7500 June 21  $1,450 owed

Paid $1000 June 22 $450 owed


4.6k May 5th

11k May 7th

Total 15.6k = $19,500

May 10th 30k girls

May 10th 15k Chris


June 07 15k Chris

June 09 22k total 5k went to girls 27k

June 10 60k total 5k went to girls 65k



GOVERNMENT
EXHIBIT

22.04

2:16CR 631 DAK

Also, I'm selling a lot more bulk online, so stuffs moving fast but it's a huge price drop, I wanna discuss this when you get back, it's getting down with all the extras that are being passed out that I'm not making nearly as much as predicted, I'm sure you know this. So probly starting next week I'm giving my shippers an up in pay but I wanna cut your pay from a full dollar to .75 cents per pill, not a huge difference until I get a bigger shipping team I have to sell bulk and not lower quantities, I wanna be fair so let me know your thoughts.

Cause.. I'm doing the math and with btc dropping extras being passed out and cost of running everything my cut is getting lower and lower, I wanna run some numbers wth you.

I feel shifty saying this but when we sell 4000 roxy at 5 a pop, they send an extra 1k it actually lowers price to 3.50.. If you get a dollar per pill and btc drops 35% I nearly get what you get but.. I'm paying employees drops

6:16 PM

Idk man, let's sit down and talk and run number, I can put prices up, move slower or we can lower prices and move quickly

6:17 PM

GOVERNMENT EXHIBIT

22.07

2:16CR 631 DAK

PENGAD 800-631-6989

Attachment D, Email Correspondence From Yvette Laughter



**Kaytlin Beckett <kbeckett@schhlaw.com>**

## Hard Drive

**Laughter, Yvette (USAUT)** <Yvette.Laughter@usdoj.gov>                    Thu, May 23, 2019 at 2:48 PM
To: Kent Burggraaf <kburggraaf@agutah.gov>, Eric Wheeler <eric@trial-tech.com>, Kaytlin Beckett <kbeckett@schhlaw.com>
Cc: Daryl Sam <daryl.sam@gmail.com>, Michael Gadd <mgadd@agutah.gov>, "gskordas@schhlaw.com" <gskordas@schhlaw.com>, Dan Ashment <Daniel.E.Ashment@ice.dhs.gov>

Good afternoon everyone –

Just wanted to give you all a quick update about the status of the hard drive transfer.   We have found what we believe to be Mr. Paz's computer images.  They are very large and are contained on three hard drives.  They should all fit on Mr. Wheeler's hard drive but since I can only copy one at a time (one hard drive receiving the info), these will not finish before the week-end.  I hope to get these to you by the end of the day Tuesday or perhaps mid-day Wednesday.

Best,

*Yvette Laughter*

Supervisory Legal Admin. Spec.

Violent Crime Section

United States Attorney's Office

111 South Main, Suite 1800

Salt Lake City, Utah 84111-2176

(801) 325-3264

Yvette.Laughter@usdoj.gov