JOHN W. HUBER, United States Attorney (#7226)
MICHAEL GADD, Special Assistant United States Attorney (#13704)
KENT A. BURGGRAAF, Special Assistant United States Attorney (#13044)
VERNON G. STEJSKAL, Assistant United States Attorney (#8434)
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682
Email: michael.gadd@usdoj.gov

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:16-cr-00631-DAK |
| Plaintiff, | RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO CONTINUE FOR FAILURE TO PROVIDE BRADY/GIGLIO MATERIAL |
| vs. | |
| AARON MICHAEL SHAMO, | |
| Defendant. | Judge Dale A. Kimball |

The United States, through counsel, provides the following response in opposition to the Defendant's Motion to Continue for Willful Failure to Provide *Brady/Giglio* Material (Doc. 224). The United States opposes the Defendant's motion on two grounds: (1) the United States has met its discovery obligations in this case, including its *Brady/Giglio* obligation; and (2) the grounds set forth in the Defendant's motion are not proper grounds for continuing the jury trial.

The United States affirms that in December 2018 it provided the Defendant with all the digital content it possessed and over which it had control. This content was provided to the Defendant on hard drives provided by defense counsel and on hard drives loaned to defense counsel. It is believed that either (a) defense counsel has in its possession all of the digital content it is now requesting, or (b) there was a copying error on the part of defense counsel from the loaned

hard drives to defense counsel's storage media. The hard drives previously loaned to defense counsel still contain the same digital content, and those same hard drives are the source from which the United States re-copied the digital content requested last week.

In short, counsel for the Defendant made an error—and the error has set back their expert's review by approximately one week. That is not a valid reason to continue the trial. The United States respectfully requests the Court deny the Defendant's motion.

## TABLE OF CONTENTS

1. STATEMENT OF RELEVANT FACTS .................................................................. 3

2. ARGUMENT ..................................................................................................... 15

2.1 The United States bears no responsibility for the Defendant's errors ........................... 15

2.2 Additional delay is unwarranted and harmful ................................................................. 16

2.3 The defense's error is not a *Brady/Giglio* violation; false accusations of *Brady/Giglio* violations have no place in pre-trial litigation ........................................................... 19

    2.3.1 An image of Luke Paz's iMac ................................................................................ 22

    2.3.2 Encrypted files from co-conspirators' devices ...................................................... 23

    2.3.3 Exhibits from Luke Paz's iMac ............................................................................. 24

3. CONCLUSION .................................................................................................. 25

## 1.     STATEMENT OF RELEVANT FACTS

1.      On November 23, 2016, the Defendant appeared for a detention hearing, after being charged by complaint, and was appointed counsel.  *See* Doc. 6 and 8.

2.      On December 7, 2016, the Defendant was indicted and arraigned.  Doc. 11 and 13.

3.      On December 14, 2016, the United States submitted its first Notification of Compliance and Request for Reciprocal Discovery (Doc. 17) and provided the discovery materials noted therein to the Defendant.  In that notice, the United States affirmed that:

> Additional discovery materials would be provided when they became available, within a reasonable time.  The United States would comply with its obligation under Rule 16 and 26.2 of the Federal Rules of Criminal Procedure and the Jencks Act without requiring the Defendant to make a specific request for such material.[1] Upon request of the Defendant, the United States would permit and facilitate the Defendant's own inspection, copying or photographing of those items described/defined in Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure. This includes items "within the government's possession, custody, or control".

4.      On January 5, 2017, the Defendant filed his first motion to continue the jury trial scheduled for February 13, 2017.  Doc. 22.  The United States did not object to this motion.  At the time of that motion, twenty-nine days had elapsed under the Speedy Trial Act.

5.      On January 6, 2017, the Court ordered the trial be continued to May 22, 2017, excluding time between the filing of the Defendant's motion to the new trial date from speedy trial computations. Doc. 23.

6.      Between February 8, 2017 and April 12, 2019, on approximately fourteen (14) subsequent occasions, the United States provided additional discovery, or notice that discovery

---

[1] The United States also requested reciprocal discovery and continuing compliance with the request.  To date, the United States has received no reciprocal discovery; the Defendant has not provided copies of the exhibits it proposes to use at trial.  On May 24, 2019, the Defendant provided an updated exhibit list without Bates numbering or copies thereof.  Under the requirements of reciprocal discovery, the Defendant must provide copies of his exhibits.  *See e.g., United States v. Swenson*, 298 F.R.D. 474, 478 (D. Idaho 2014).

had previously been provided, and/or notice of availability to inspect discoverable materials to the Defendant, within a reasonable time of the materials coming into possession/control of the United States.  Corresponding notices of compliance were filed.[2]  In those notices, most affirmed the same intent as was included in the first notice of compliance.

7.      On May 15, 2017, the Defendant filed his second motion to continue the jury trial scheduled for May 22, 2017.  Doc. 28.  The United States did not object to this motion.

8.      On May 17, 2017, the Court ordered the trial be continued to August 28, 2017, excluding time between the date of the order and the new trial date from speedy trial computation. Doc. 29.

9.      On May 31, 2017, the Defendant and five co-defendants were indicted under a superseding indictment.  Doc. 32.

10.     On June 30, 2017, upon motion by defense counsel for the defendants in this matter (effectively Defendant Shamo's third motion to continue), Magistrate Judge Evelyn Furse ordered the jury trial continued, setting a status conference on August 31, 2017, and excluding time between June 30, 2017, and the status conference from speedy trial computation.  Doc. 65.  The United States did not object to this request for a continuance.  This was the third continuance of the trial.

11.     On September 1, 2017, following a status conference on August 31, 2017, Magistrate Judge Evelyn Furse ordered a second status conference on December 1, 2017, and excluded time between August 31, 2017 and December 1, 2017, from speedy trial computation. Doc. 69.

---

[2] *See* Court docket, documents 24, 25, 62, 70, 89, 95, 106, 112, 113, 122, 141, 173, 175, and 187.

12.     On December 1, 2017, upon motion by defense counsel for the defendants (effectively Defendant Shamo's fourth motion to continue), Magistrate Judge Evelyn Furse ordered a third status conference on February 28, 2018, and excluded time between December 1, 2017, and the third status conference from speedy trial computation.  Doc. 82.

13.     Approximately eighteen months ago, on December 14, 2017, the United States provided the following notice to the Defendant in the United States' Supplemental Notification of Compliance and Request for Reciprocal Discovery (Doc. 89):

> "The United States has previously made available, and continues to make available forensic data from seized electronic devices, as follows.  Parties who seek to obtain their own copy of the forensic data have been asked to provide an 8TB hard drive and a 3TB hard drive to the United States Attorney's Office."  [A detailed list of 65 electronic devices/data was included.]

14.     On February 1, 2018, the United States provided the following notice to the Defendant, in the United States' Supplemental Notification of Compliance and Request for Reciprocal Discovery (Doc. 95):

> "The United States continues to make available forensic data from seized electronic devices.  The latest devices are listed as follows.  Parties who seek to obtain their own copy of the forensic data have been asked to provide an 8TB hard drive and a 3TB hard drive to the United States Attorney's Office."  [A list of two additional devices/data was included ("Shamo iPhone 6s" and "Shamo iPhone 7 – Axiom, Cellebright").]

15.     On February 28, 2018, Magistrate Judge Paul M. Warner scheduled a jury trial in this matter for August 20, 2018, ordering time be excluded between February 28, 2018, and the jury trial date from speedy trial computation (order entered March 1, 2018).  Doc. 97.

16.     Between May 10, 2018, and December 20, 2018, the United States provided six

discovery notices to the Defendant that stated (Doc. 106, 112, 113, 122, 141, and 173):[3]

> "The United States continues to make available forensic data from seized electronic
> devices.  Parties who seek to obtain their own copy of the forensic data have been
> asked to provide an 8TB hard drive and a 3TB hard drive to the United States
> Attorney's Office."  [No additional/new devices were listed in the notice.]

17.     On August 1, 2018, the Defendant filed his third written motion to continue (his

fifth overall motion to continue) the jury trial. Doc. 125.  The United States did not object to this

motion.

18.     On August 3, 2018, the Court Ordered the trial continued from August 20, 2018 to

January 22, 2019, excluding time between the date of the order and the new trial date from speedy

trial computation.  Doc. 127.

19.     On October 18, 2018, the Defendant was indicted under the second superseding

indictment.  Doc. 136.

20.     Based on representations of and documentation tendered by defense counsel, on or

about November 26, 2018, the Defendant provided two hard drives to the U.S. Attorney's Office.

These were delivered on a day when the assigned front-desk staff from the U.S. Attorney's Office

was out of the office.  The hard drives were not addressed to the assigned prosecutors or paralegal.

The hard drives did not reference this case by complete case name or case number. None of the

prosecutors or paralegals working on this case knew about the hard drives until a member of the

defense inquired about them. This resulted in several days of delay in locating the hard drives.

---

[3] A similar notice was also repeated a seventh time (disclosing the available forensic data from
seized electronic devices) in the United States' Supplemental Notification of Compliance and
Request for Reciprocal Discovery, filed April 4, 2019 (Doc. 187).

Due to the size of the digital content, in excess of 11 terabytes, duplicating the files required just under two weeks (started December 7, and concluded on or around December 20, 2018).

21.     On December 7, 2018, counsel for the United States emailed to defense counsel information and twenty-seven (27) documents deemed to be subject to disclosure pursuant to *Brady*, *Giglio*, and the Jencks Act.

22.     On December 20, 2018, the United States notified defense counsel that the hard drives with the requested digital content were ready for pickup and filed two Supplemental Notification of Compliance and Request for Reciprocal Discovery (Doc. 173 and 175).  Doc. 175 included the following:

> "The United States of America, by and through the undersigned, hereby files a supplemental notification in regards to its discovery obligations. The United States made forensic data from seized electronic devices available to all defense counsel prior to December 2017. Doc 89, at 4. Counsel for Mr. Shamo have recently provided external hard drives to the United States and the United States has made copies of the forensic data from the case for the defense. Three hard drives containing forensic data were provided to the defense on December 19, 2018; two more hard drives containing forensic data are available today for pick-up. Included on the hard drives is forensic data from two more recently seized devices. The United States has continuously made all its forensic data available. Because the hard drives from Mr. Shamo's defense counsel were not large enough to contain all the forensic data, the United States has loaned three hard drives containing data to the defense. The two newer devices are a cell phone from M.P. and an iMac computer from L.P."

23.     On December 20, 2018, within the digital content of the discoverable materials, the United States provided to the Defendant the two exhibits mentioned in and included as attachments to the Defendant's current motion to continue.  *See* Doc. 224. The exhibits come from Luke Paz's iMac computer, for which the forensic image file(s) were provided.  They were not individually

bates stamped when provided, because they were part of a larger digital file (i.e., the large forensic image files of Luke Paz's iMac computer).[4]

24.     On December 27, 2018, the Defendant filed his fourth written motion to continue (his sixth motion to continue when including the two oral motions).[5]  Doc. 178.  On the same day,

---

[4] The United States does not bates stamp every individual document, folder, subfolder, etc. included within a larger digital forensic image file.  To do so, especially in a case with as many electronic device image files as this case has, would not be tenable.  The larger file itself, or the storage media in which the file is included, are routinely bates stamped instead.
As illustrative of this point, many of the 14-series exhibits proposed by the United States and now mostly admitted, were not bates stamped, because they came from a larger volume of digital content—the Defendant's computer and cell phones.  *See* Docket Entry 219.

[5] Defense counsel communicated with counsel for the United States about this continuance.  While the United States did not object to the motion, it communicated to defense counsel its disagreement with part of the reasoning outlined in Defendant's motion and included in the proposed order.  Specifically, counsel for the United States reminded defense counsel that the majority of the digital evidence had been made available to defense counsel since December 14, 2017, a year earlier.  The only digital evidence noticed as available after that date were forensic content of the Defendant's two cell phones on February 1, 2018 (with notice provided prior to the discovery deadline), and the forensic image of an iMac computer belonging to Luke Paz and cell phone content of M.P., not received by the United States until late in 2018.  Therefore, the Defendant had the opportunity to obtain copies of the majority of the forensic content well in advance of its December 2018 motion to continue; the United States expressed to defense counsel that this point was not clear in the motion to continue nor the proposed order.

The Defendant's December 2018 motion to continue give the appearance that the United States delayed in providing discovery, when in actuality, the defense waited until November 2018 to request a copy of the digital content and was then dissatisfied when multiple terabytes of data, including the forensic image of Luke Paz's iMac, took a lengthy period of time to copy.  [Large amounts of digital content, i.e., multiple terabytes, can take multiple days or weeks to copy, depending on the hardware and software being used to duplicate the content.  It's unclear whether defense counsel either then or now is aware of this logistical issue in duplicating digital content, while ensuring the file(s) are not changed.  It is one of the reasons for which the United States provided early notice of the large quantity of digital content available for viewing or copying.]

In his December 2018 motion to continue, the Defendant states that the United States misrepresented the amount of digital content, because it initially only requested that defense counsel provide an 8 terabyte hard drive and a 3 terabyte hard drive, when ultimately the digital content was more than 11 terabytes total (defense counsel's assertion being that it was 20 terabytes of data).  However, the 8TB and 3TB hard drive were required in reference to the digital content noticed in the United States' Supplemental Notification of Compliance and Request for Reciprocal

the Court ordered the jury trial scheduled for January 22, 2019, continued to June 17, 2019, also ordering the exclusion of time between December 27, 2018, and the new trial date from Speedy Trial Act computation.  Doc. 179.

25.     On April 17, 2019, the United States provided to defense counsel its list of proposed exhibits.  See Doc. 190.  The United States also notified defense counsel that by the end of the following day (April 18) a DVD with a copy of all the proposed electronic exhibits for the United States would be available for pickup at the U.S. Attorney's Office.  The DVD contained the two exhibits cited to and included in the Defendant's current motion to continue, along with other items from Luke Paz's computer (listed in the United States' 22-series of exhibits).[6]  This was the second time content from Luke Paz's computer was provided to defense counsel.

26.     On April 24, 2019, as a supplement to prior disclosures, counsel for the United States emailed to defense counsel information and twenty-eight (28) documents deemed to be subject to disclosure pursuant to *Brady*, *Giglio*, and the Jencks Act.

27.     On April 26, 2019, the Defendant filed his Notice of Expert Eric Wheeler (Doc. 195).  In it, the Defendant included:

> "Mr. Wheeler has reviewed all data and information provided by the Government concerning electronic data, electronically stored information, computer records, and the defendant's alleged use of the "dark web" for drug sales related to several of the counts in the Second Superseding Indictment.  Specifically, Mr. Wheeler has reviewed the cell phones, computers, and electronic devices of co-defendants and co-conspirators."

---

Discovery, filed December 14, 2017 (Doc. 89).  The United States hoped to fit the additional content on an 8TB and 3TB hard drive provided by defense counsel; however, when it was determined the additional files would not fit on the hard drives provided, to avoid delay, the United States placed the additional content on its own hard drive(s) and allowed defense counsel to borrow those drive(s).

[6] The United States proposed exhibits that came from Luke Paz's computer were not objected to by the Defendant and were admitted by the Court (as to foundation).  *See* Docket Entry 219.

28.     On April 26, 2019, the United States filed its Motion to Strike Defendant's Expert Eric Wheeler and Request for a *Daubert* Hearing, based on inadequate Rule 16 disclosure by the Defendant.  Doc. 201.  Resolution of this motion is still pending.

29.     On May 21, 2019, almost a month after the Defendant's notice of expert had asserted Mr. Wheeler had already reviewed all the electronic data, counsel for the United States received a phone call from the Defendant's counsel, Daryl Sam.  Mr. Sam expressed that the Defendant's computer expert, Eric Wheeler, could not locate the full forensic image/files for Luke Paz's iMac computer in the discovery previously provided.

30.     The phone call on May 21, 2019, was followed up with a conference call on the same day between counsel for the Defendant, Daryl Sam, Defendant's computer expert, Eric Wheeler, and counsel for the United States.  Counsel for the United States affirmed that it had previously provided a full forensic copy of the forensic image for Luke Paz's iMac computer in December 2018[7] and that there may have been a copying error when counsel for the Defendant copied the forensic image files in which larger files were not copied.[8]  However, counsel for the

---

[7] In providing the forensic image of Luke Paz's iMac computer in December 2018, the United States explained that in conjunction with the other digital content being provided, the forensic image files were too large to fit on the remaining space of any one hard drive and therefore forensic image files were included on three separate hard drives.

[8] The United States utilizes specific software in the copying process to ensure digital content, including file metadata, is not changed and to ensure all files, including large files such as forensic image files, are completely copied over.  This is necessary to ensure that metadata such as accessed/modified/created dates are not changed, and because traditional copy/paste or drag/drop methods of copying will not always duplicate all files accurately, particularly larger files.  Counsel for the United States explained this during its phone call with defense counsel and defense expert during its phone call on or about May 21, 2019.  Counsel for the United States also expressed its suspicion that perhaps defense counsel did not provide a full copy of the forensic image to Mr. Wheeler, if defense counsel utilized a copy/paste or drag/drop method for copying the files.

United States offered to provide Mr. Wheeler with another copy.  It was agreed[9] that Mr. Wheeler would drop off a hard drive at the U.S. Attorney's Office the following day, so that the United States could recopy the requested files. Additional phone numbers were exchanged between the parties to facilitate continued communication regarding the proposed actions.

31.     During the conference call on May 21, 2019, Mr. Wheeler raised the question about the encrypted files within the digital content provided to the defense in December 2018.  Counsel for the United States partially explained during that phone call, and then explained further the following day, that the files of some of the electronic devices were in an encrypted state when seized.  Agents for the United States were unable to decrypt the encrypted files, because decrypting them would require a password/key, which agents of the United States did not have (i.e., the files were encrypted by someone in possession of them prior to them being seized).  It was further explained that these encrypted files were provided in the interest of full disclosure and transparency through the discovery process.  While the encrypted files were seized pursuant to legal authority, the United States does not know what is contained within the encrypted files.[10]

---

[9] The Defendant asserted in his motion that the United States "insisted that Mr. Wheeler provide a new hard drive for copying of the forensic image of Mr. Paz's iMac."  The Defendant then asserted, "This insistence seemed improper as the Government had insisted that these hard drives (which were previously provided to Defense Counsel) had proper forensic images and copying such a large file size would require several days."  It is correct that counsel for the United States explained that re-copying these files would take several days, however the Defendant's motion mischaracterizes the interaction, in that the parties discussed how to get Mr. Wheeler what he needed as quickly as possible.  Not knowing whether defense counsel had properly copied the files which had previously been provided to them, it was determined and agreed upon to just provide Mr. Wheeler with another copy and that he would deliver a hard drive to the U.S. Attorney's Office for that purpose.  [It is possible that the drafter of the Defendant's motion was not Mr. Sam, in that the conversations between him, Mr. Wheeler and counsel for the United States were cordial and professional.]

[10] Based on the assertions of the Defendant, in paragraphs 26-28, it appears that there may be a lack of understanding about the processes used by computer forensic examiners in performing cell phone extractions and in creating a forensic image of a computer hard drive.  In processing digital evidence, computer forensic examiners for the United States attempt to decrypt cell phones and

32.     On May 22, 2019, counsel for the United States received a call from the Defendant's computer expert, Eric Wheeler.  During that call, he requested that in providing the duplicate copy of the digital content discussed the prior day, he would like any digital files related to phones or computers for Drew Crandall and Luke Paz, not just the forensic file(s) for Luke Paz's iMac computer.  [The request for the additional content appeared abnormal, based on the Defendant's Notice of Expert filed a month earlier, and based on the trial proximity.]

33.     During the phone call on May 22, 2019, Mr. Wheeler acknowledged that the additional requested electronic data would be a larger quantity of digital content than previously requested, but that he thought his 8 terabyte hard drive would be sufficient.[11]  Mr. Wheeler acknowledged that he had received some of the forensic image files of Luke Paz's iMac computer from defense counsel, but believed he had not received all the forensic image file(s).

---

computer files by using known or identified passwords, by brute force, or other methods (i.e., they attempt to decrypt, they do not encrypt files).  Sometimes, as in this case, computer forensic examiners are unable to decrypt encrypted files.  The evidence is of little value in an encrypted state.

The assertions made in the Defendant's motion seem to indicate that the United States encrypted the files either before or after imaging a computer.  However, there is not a reason to encrypt these forensic images as has been suggested by the Defendant's motion.  Furthermore, the Defendant's motion did not specify any evidence or exhibits the United States has turned over that demonstrated that the United States has in fact accessed the encrypted files (i.e., accessed/is in possession of files from the devices from which the encrypted files came).  The United States affirms it is not aware of the location of any nor does not have a copy of these encrypted files in a decrypted state.  Based on the Defendant's description, the United States further affirms that it is not the party responsible for encrypting the files.

The United States wanted to avoid the claim that governmental agents seized electronic devices and either did not search them, or searched them and did not turn over what was found.  In reality (and for transparency), agents for the United States found some encrypted file(s) for which they were unable to decrypt.

[11] Counsel for United States directly communicated Mr. Wheeler's wishes to the legal staff at the U.S. Attorney's Office.

34.     On May 22, 2019, pursuant to Mr. Wheeler's request, staff at the U.S. Attorney's Office began copying approximately 1.98 terabytes of digital content pertaining to Drew Crandall and Luke Paz.  However, this 1.98 terabytes did not include the forensic image files of Luke Paz's iMac computer.

35.     On May 22, 2019, staff at the U.S. Attorney's Office attempted to locate the hard drives previously loaned to defense counsel with the forensic image of Luke Paz's iMac computer. This was done in an effort to save re-copying time, anticipating the same hard drives could be provided to Mr. Wheeler.[12]

36.     On May 23, 2019, staff for the United States discovered and recalled that in providing the forensic image files for Luke Paz's iMac computer in December 2018, the files had been split between multiple hard drives, due to their size and the other content being provided.[13] Rather than risk defense counsel or Mr. Wheeler not being capable of identifying/recognizing all the forensic image files stored on the hard drives previously loaned to defense counsel (i.e., they were not previously able to identify/recognize them), the United States began copying the files from the different hard drives onto the hard drive provided by Mr. Wheeler.

37.     On May 23, 2019, staff at the U.S. Attorney's Office emailed defense counsel and counsel for the United States, informing them that the re-copying process for the forensic image files of Luke Paz's iMac computer was underway.  This email notice explained that due to the files

---

[12] Part of that process of locating the loaned hard drives included an email inquiry to defense counsel to determine if the hard drives had been returned to the U.S. Attorney's Office; it was confirmed that the hard drives loaned to defense counsel had been returned. The hard drives were located by staff at the U.S. Attorney's Office.

[13] This may also explain why defense counsel may have failed to provide its own expert a full copy of the forensic image files of Luke Paz's iMac computer, not realizing it was located in multiple locations and not recognizing/identifying all the files needed by Mr. Wheeler, thereby only providing a portion of the forensic image files.

being located on multiple hard drives (i.e., the hard drives previously loaned to defense counsel in December 2018), and due to the large file size, the re-copying process to Mr. Wheeler's hard drive would not be completed before the weekend.

38.     The United States affirms that in December 2018 it provided the Defendant with all the digital content it possessed and over which it had control.  This content was provided on the hard drives provided by defense counsel, and on hard drives loaned to defense counsel.  It is believed that either defense counsel has in its possession all of the digital content of which it requested a copy last week, or there was a copying error on the part of defense counsel (from the loaned hard drives to defense counsel's storage media).  The hard drives previously loaned to defense counsel still contain the same digital content, and those hard drives are the source from which the United States re-copied the digital content requested.

39.     On May 24, 2019, the Defendant filed its Motion to Continue for Willful Failure to Provide *Brady/Giglio* Material.  Doc. 224.  Other than the emails and the cooperative phone calls between the parties, counsel for the United States received no communication from defense counsel regarding the discovery provided, nor the United States efforts to provide defense counsel and their expert another copy of the digital content requested.

40.     Today, May 28, 2019, staff at the United States Attorney's Office provided notice to the Defendant's expert and counsel that Mr. Wheeler's hard drive was ready for pickup.[14]

---

[14] This delay and additional effort might have been avoided, were the Defendant's inquiry and request received in a timelier fashion (e.g., more than four weeks prior to trial or closer in proximity to the time in which notice of the digital content was given).

## 2.     ARGUMENT

The United States urges the Court to deny the Defendant's motion to continue because (1) the United States bears no responsibility for the errors made by defense counsel in copying or transferring the image of Luke Paz's iMac; and (2) additional delay is unwarranted and harmful. The United States also notes that the Defendant's accusations of willful *Brady/Giglio* violations are wholly without merit.

### 2.1     The United States bears no responsibility for the Defendant's errors

The one-week delay to Mr. Wheeler's review came as a result of an error by the defense—the United States has fully complied with its discovery obligations. Rule 16 requires the United States to provide discovery to the Defendant and the United States' discovery obligations remain ongoing. The United States takes a broader view of its discovery obligations than required by Rule 16.

With few exceptions, the material in dispute in the Defendant's motion to continue are files that collectively make up a bit-for-bit copy of Luke Paz's iMac computer. Those files, referred to as an image of his computer, were provided to counsel for the Defendant in December 2018. As explained above, the United States loaned three hard drives to the defense in December 2018. Those loaned hard drives contained the image of Luke Paz's iMac. Counsel for the Defendant attempted to make a copy of the loaned hard drives and then returned the loaned hard drives to the United States.

On April 26, 2019, counsel for the Defendant filed a document indicating its expert, Mr. Wheeler, had reviewed the image of Luke Paz's iMac, among other electronic data. But on May 21, 2019, Mr. Wheeler and counsel for the Defendant indicated they could not locate the full image of Luke Paz's iMac.

The image of Luke Paz's iMac is still on the loaned hard drives. The United States used those same loaned hard drives to transfer the image files directly to Mr. Wheeler's hard drive, thereby eliminating any chance counsel for the defense could make additional errors in copying or transferring the data for Mr. Wheeler.

As explained above, it appears that counsel for the defense either (1) erred in copying the loaned hard drives in December 2018 and January 2019; or (2) erred in transferring the image files to Mr. Wheeler.

The error resulted in an approximately one-week delay for Mr. Wheeler to review the image files of Luke Paz's iMac. The United States had no control over the error. The United States worked diligently to provide another copy of those same files so that Mr. Wheeler could conduct his review.

## 2.2    Additional delay is unwarranted and harmful

The Court should deny the Defendant's motion to continue as there is no valid basis on which to grant the motion and because additional delay would not be consistent with aims of the Speedy Trial Act. The Sixth Amendment of U.S. Constitution guarantees the Defendant's right to a speedy trial. Congress has codified that right: "In any case involving a defendant charged with an offense, the appropriate judicial officer, at the earliest practicable time, shall, after consultation with counsel for the defendant and the attorney for the Government, set the case for trial a day certain… so as to assure a speedy trial." 18 U.S.C. §3161(a).

The opposite guarantee—a right to unlimited continuances—is neither a constitutional nor statutory right.  However, in order to ensure that a defendant is not rushed to trial without an adequate opportunity to prepare, Congress amended the Speedy Trial Act in 1979 to provide a

minimum time period during which trial may not commence. Speedy Trial Act Amendments of 1979, Pub. L. No. 96-43, Section 3, 93 Stat. 327. The amendment provided that trial may not begin less than 30 days from the date the defendant first appears in court, unless otherwise agreed to in writing. 18 U.S.C. §3161(c)(2).

The 30-day defense preparation period provided for in §3161(c)(2) is calculated without reference to the §3161(h) exclusions. Therefore, while only twenty-nine days have elapsed under the Speedy Trial Act, more than thirty-days have elapsed in reference to §3161(c)(2). Indeed, the Defendant has been in custody for two and one-half years.

The Defendant's motion fails to cite to any authority that holds a continuance of a trial is a proper remedy for the United States' alleged conduct. The Defendant alleged a *Brady/Giglio* violation as a justification for the continuance, without excluding time under the Speedy Trial Act. Doc. 224.

The United States has found no case law or statutory basis to continue the trial because an error by a defense attorney led to a one-week delay in a defense expert's review of forensic data. There is not a good reason to continue the trial. At most, the Court should continue Mr. Wheeler's Daubert hearing by one week so that he can have the extra week to conduct his review.

As noted above, this case has been continued approximately six times previously upon request of the Defendant. At the time that each of these prior continuances were requested, the United States either did not object or stipulated to accommodate the Defendant, notwithstanding the United States preparations for trial. Each of the continuances has required witnesses to change their schedules and required some to cancel hotel and flight accommodations.

One of the United States' key witnesses died while this case has been pending trial.  Several of its witnesses have retired, changed employment, or changed assignments within their agencies. The memories of the United States' witnesses are not improving with time. Another continuance should not be granted as it is not in the interest of justice to delay this matter further.  If the trial were again continued, it would again cause great inconvenience to the United States' witnesses, many of whom reside outside the State of Utah.

In considering the Defendant's motion, the Court should take note of the inconsistency or misrepresentation regarding the Defendant's proposed expert, Eric Wheeler.  In their Notice of Expert, they assert that Mr. Wheeler had already reviewed all the data and content from all cell phones, computers, and electronic devices of co-defendants and co-conspirators, at least as of April 26, 2019. *See* Doc. 195. Almost a month later, on May 21, 2019, defense counsel and Mr. Wheeler contacted the United States to make inquiries and requests related to the electronic data provided to them on or about December 20, 2018.  The order in which things have transpired should lead the Court to a finding that it was not the United States' willful conduct that has hindered the Defendant's preparation for trial.

The Defendant's expert, Mr. Wheeler, has been engaged since approximately April on tasks for the Defendant such as organizing discovery.  The Defendant has waited until after the motion deadline and the Exhibit-List deadline to have Mr. Wheeler review Mr. Paz's iMac contents and other electronic devices from the Defendant's co-conspirators.  The review of those devices has not been the highest priority for the Defendant.  The error by defense counsel has only set Mr. Wheeler's review back by approximately one week.  The Defendant did not cite to a reason for excluding time (or not excluding time) under the Speedy Trial Act that applies to this

circumstance.  The United States submits that there is no valid reason to continue the jury trial scheduled to begin June 17, 2019.

**2.3    The defense's error is not a *Brady/Giglio* violation; false accusations of *Brady/Giglio* violations have no place in pre-trial litigation**

Counsel for the Defendant made an error that set back their expert's review by one week but that error cannot be converted into a *Brady/Giglio* violation; the Court should look disapprovingly on false accusations of *Brady/Giglio* violations. The Defendant's motion points out three items as evidence of the United States' willful *Brady/Giglio* violation: (1) the forensic image files from Luke Paz's computer; (2) encrypted files from a co-conspirators' devices; and (3) non-bates stamped exhibits from Luke Paz's computer.   None of these items are being suppressed by the United States and therefore does not arise to a *Brady/Giglio* violation.  These items were provided to the Defendant in December 2018 and have now been re-copied from the same drives previously loaned to defense counsel as a courtesy to defense counsel and Mr. Wheeler.  This additional copy of discoverable material will once again include the forensic image files from Luke Paz's iMac computer, which includes the exhibits cited to in the Defendant's motion.

*Brady v. Maryland* established that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution.  373 U.S. 83, 87 (1963).  Within the *Brady* rule falls impeachment evidence as well as exculpatory evidence. *Giglio v. United States*, 405 U.S. 150, 154 (1972).

Here, there is no *Brady* or *Giglio* issue.  On approximately fifteen occasions the United States has provided and supplemented evidence to the Defendant, including notices of digital

content available to be inspected or copied. On two additional occasions the United States provided material which the United States believed to be disclosable under its *Brady/Giglio* obligation or pursuant to the Jencks Act.

The Defendant's motion cites to *United States v. Young*, 45 F. 3d 1405. In *United States v. Young*, the Tenth Circuit Court of Appeals held, among other things, (1) the government's delayed disclosure of impeachment evidence did not deprive Young of a fair trial, and (2) delayed disclosure did not violate the Young's rights under the Sixth Amendment or Jencks Act.

Young was part of an eleven-person conspiracy to distribute cocaine. Young and one other co-defendant proceeded to trial, resulting in the defendant being convicted of two counts of money laundering. During trial the government introduced a tape recording between two co-conspirators which had not previously been provided to Young. Over Young's objection claiming a *Brady* violation (i.e., violation of her due process rights), the court admitted the tape recording with impeaching evidence against a co-conspirator.

Unlike *Young*, where the material evidence was provided during trial and ruled as adequate disclosure, here the claimed material evidence has been provided previously and a courtesy copy has again been provided—prior to trial. The United States' disclosure in December 2018, and the additional copy of electronic data provided today, is not so late as to prejudice the Defendant; i.e., disclosure of the three items mentioned in the Defendant's motion did not come so late as to inhibit the Defendant's effective use. *See United States v. Rogers*, 960 F.2d 1501, 1511 (10th Cir. 1992); *Cf. United States v. Beale*, 921 F.2d 1412 (11th Cir. 1991).

"[T]he relevant standard of materiality does not focus on the trial preparation, but instead on whether earlier disclosure would have created reasonable doubt of guilt that did not otherwise exist." *United States v. George*, 778 F.2d 556, 562 (10th Cir. 1985)(citing *United States v. Agurs*,

427 U.S. 97, 112 n. 20 (1976)).  Here, the United States provided disclosure of the evidence at issue almost six months prior to the current trial setting (which the Defendant claimed his expert, Mr. Wheeler had already reviewed in their notice of expert, filed April 26, 2019).[15]  Whether the evidence at issue was provided in December 2018 or this week does not create a reasonable doubt that did not otherwise exist.[16]

Like the court in *Young*, the Court should find that the disclosure of the three items mentioned in the Defendant's motion do not constitute a *Brady/Giglio* violation, nor does their disclosure inhibit the Defendant from having a fair trial as currently scheduled.

The Defendant claims as the basis for the continuance that the United States has failed to provided evidence material to his defense.  As is outlined above, the United States has provided discoverable materials to the Defendant on approximately fifteen occasions.  The United States has provided the Defendant discoverable materials in close proximity to when it received them.

When electronic data was of substantial size, the United States provided notice of the items and an opportunity to inspect or copy the materials.  This notice was then duplicated as a reminder in subsequent discovery notices.  The first notice of an opportunity to inspect was provided in the first Notification of Compliance and Request for Reciprocal Discovery, dated December 14, 2016.

---

[15] Previously the Defendant represented that they had "retained a computer forensic examiner who indicated a review of 11 terabytes would require a month." Doc. 178.  Under the same approximate time frame for review, the current trial setting should allow for sufficient time (i.e. three weeks) for the Defendant's computer expert, Eric Wheeler, to review less than eight terabytes of data.

[16] If the co-defendants Paz and Crandall also committed the offense indicted in Count I and Count VI as alleged in the Defendant's motion (though unindicted), that would not change the fact that the Defendant committed the offenses (i.e., it would not create a reasonable doubt that he committed the offenses, but merely illustrates the ongoing conspiracy and criminal enterprise in which he was engaged).  Contrary to the Defendant's assertions, the United States has never asserted that Mr. Shamo played a less culpable role as compared to co-defendants Paz and Crandall.

*See* Doc. 17.  The notices and invitations to inspect or copy discoverable materials became even more specific, beginning with the United States Supplemental Notification of Compliance and Request for Reciprocal Discovery, dated December 14, 2017, and continuing in notices thereafter as a reminder, in which the United States provided specifics for getting copies of the electronic data in the possession of the United States.  *See* Doc. 89.  It was not until almost a year later, in November 2018, in which the Defendant requested a copy of the electronic data, and then expressed dismay when it could not be copied and provided more quickly.

### 2.3.1   An image of Luke Paz's iMac

The Defendant's motion to continue focuses on digital content and exhibits found on Luke Paz's iMac computer, insinuating that this content and exhibits were intentionally withheld. However, as was explained to defense counsel on multiple occasions, the forensic image of Luke Paz's computer, and the computer itself, were not received by the United States until late in 2018. The forensic image of Luke Paz's iMac computer was promptly given to the Defendant even before investigators for the United States had a sufficient opportunity to go through it.  The United States began transferring a bit-for-bit copy for the Defendant of Luke Paz's iMac computer the same day it received from the Rocky Mountain Computer Forensic Laboratory a hard drive containing the iMac computer's forensic image files.  The United States acted with great expediency because it recognized the potential for the digital content to contain relevant material.

While initially preparing the electronic data to be provided to the Defendant in December 2018, the forensic files from Luke Paz's computer had not been anticipated because the forensic image files were not previously in the possession of the United States.  Due to the size of the files, the forensic image files had to be divided across multiple hard drives to be provided to the Defendant.  Were these forensic image files to be included on a single hard drive, it would have

required a significant amount of time to re-arrange and re-copy other electronic data already copied to the hard drives to be loaned to defense counsel.

In hindsight, taking extra time to put all of the forensic image files from Luke Paz's iMac on one hard drive would have been more ideal, since the Defendant (i.e., defense counsel and/or their retained expert) ultimately could not identify or recognize the corresponding files, or possibly failed to use a proper process to create a duplicate copy.[17]  However, at the time these files were being provided, on or about December 20, 2018, the United States and the Defendant were still preparing for the jury trial in this matter, which was scheduled to go forward in less than a month (January 2019).  The United States desired to provide the electronic data requested as quickly as possible to allow the Defendant as much time as possible to prepare for the upcoming January trial.  [The Defendant did not file his motion to continue the January 2019 trial date until December 27, 2018, after his counsel received the digital files from the United States.  *See* Doc. 179.]

### 2.3.2   Encrypted files from co-conspirators' devices

The Defendant's motion insinuates that the United States has further hindered his preparation for trial by providing encrypted files of a co-conspirator's computer and failing to provide a decrypted version.  *See* Doc. 224, p. 5.  Again, the United States affirms it has complied with its discovery obligation.  The handful of encrypted files are in the same format in which the United States received them.  The United States does not have password/key needed to decrypt the files.  Thus, the United States does not know the contents of the encrypted files but provided a

---

[17] This past week, when the staff at the U.S. Attorney's Office located the hard drives it had previously loaned to defense counsel, they were quickly able to identify and recognize the forensic image files from Luke Paz's computer.  Because a computer forensic expert for the United States was not needed to locate and identify these files, it is unclear why the defense could not locate them previously.  This is what led counsel for the United States to believe that perhaps there had been a duplication error by the defense.

copy of the encrypted file(s) due to the source (i.e., a co-conspirator) and in the interest of full transparency and disclosure.

As for the encrypted files, it is debatable whether the files are material under *Brady*. *See e.g., United States v. Bagley*, 473 U.S. 667, 682 (1985)(Evidence is material within the meaning of *Brady* "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different"). The United States has no way of knowing whether the files are subject to disclosure under Rule 16, *Brady, Giglio*, or the Jencks Act, because it has been unable to decrypt the files. The contents are unknown to the United States. In their encrypted state, the files will likely not have a reasonable probability of changing the trial's outcome. Nevertheless, the encrypted files have been provided in the spirit of full disclosure. And the existence of encrypted files, for example on devices that were seized from Drew Crandall, might be an avenue the Defendant could pursue in his examination of Drew Crandall.

### 2.3.3   Exhibits from Luke Paz's iMac

The United States did not anticipate using the content from Luke Paz's iMac computer at the Defendant's January 2019 trial; the United States was not aware of the relevant content that originated on Mr. Paz's iMac at that time. With the continuation of the trial (*see* Doc. 179) and the extension of the discovery deadline to April 10, 2019 (*see* Doc. 180), the United States reviewed the contents of Luke Paz's computer by searching the forensic image files provided to the Defendant on or about December 20, 2018. It was within these files that the exhibits cited to and included in the Defendant's motion to continue were found.

### 2.3.4 False accusations of *Brady/Giglio* violations have no place in pre-trial litigation

Willfully withholding exculpatory evidence, or other *Brady/Giglio* violations, are among the most serious accusations that can be leveled against a prosecutor. If true, those allegations would lead to termination of employment, bar discipline, and the likely dismissal of the case.

False accusations of prosecutorial misconduct are equally as serious.

The Defendant's accusations are wholly without merit, as shown above. The United States has been fully compliant with its discovery obligations and its disclosure obligations under *Brady, Giglio*, and the Jencks Act. The Defendant used those false accusations to seek a trial continuance. Such false accusations are sanctionable. See 18 U.S.C. § 3162(b). The United States will leave it to the Court to determine if sanctions are appropriate.

## 3.   CONCLUSION

The United States respectfully requests that the Court deny the Defendant's motion to continue because: (1) the United States has met its discovery obligations in this case and its *Brady/Giglio* obligations; and (2) the grounds set forth in the Defendant's motion are not proper grounds for continuing the jury trial.

Respectfully submitted this 28th day of May, 2019.

JOHN W. HUBER
United States Attorney

*/s/ Michael Gadd*
MICHAEL GADD
Special Assistant United States Attorney

*/s/ Kent A. Burggraaf*
KENT A. BURGGRAAF
Special Assistant United States Attorney

*/s/ Vernon G. Stejskal*
VERNON G. STEJSKAL
Assistant United States Attorney