```
 1                IN THE UNITED STATES DISTRICT COURT

 2                         DISTRICT OF UTAH

 3                         CENTRAL DIVISION

 4

 5   UNITED STATES OF AMERICA,     )

 6            Plaintiff,           )

 7   vs.                           )     Case No. 2:16-CR-631DAK

 8   AARON MICHAEL SHAMO,          )

 9            Defendant.           )

10   _____)

11

12

13          BEFORE THE HONORABLE DALE A. KIMBALL

14          --------------------------------------

15                        May 29, 2019

16

17                       Motion Hearing

18

19                      Partial Transcript

20

21

22

23

24

25
```

```
 1                      A P P E A R A N C E S

 2

 3   For Plaintiff:            S. MICHAEL GADD
                               348 East South Temple
 4                             Salt Lake City, Utah

 5                             VERNON G. STEJSKAL
                               111 South Main Street
 6                             Suite 1800
                               Salt Lake City, Utah
 7
                               KENT A. BURGGRAAF
 8                             348 East South Temple
                               Salt Lake City, Utah
 9

10   For Defendant:            GREGORY G. SKORDAS
                               KATYLIN V. BECKETT
11                             560 South 300 East
                               Suite 225
12                             Salt Lake City, Utah

13                             DARYL P. SAM
                               5955 South Redwood Road
14                             Suite 102
                               Salt Lake City, Utah

15

16

17

18

19

20

21
     Court Reporter:           Ed Young
22                             351 South West Temple
                               Room 3.302
23                             Salt Lake City, Utah 84101-2180
                               801-328-3202
24                             ed_young@utd.uscourts.gov

25
```

```
 1   May 29, 2019                                      9:00 a.m.

 2                       P R O C E E D I N G S

 3

 4            THE COURT:  We're here this morning in the matter

 5   of United States of America vs. Aaron Shamo, 2:16-CR-631.

 6   The United States is represented by Mr. Michael Gadd,

 7   Mr. Vernon Stejskal and Mr. Kent Burggraaf.

 8            Correct?

 9            MR. GADD:  Correct, Your Honor.

10            THE COURT:  The defendant is present and

11   represented by his counsel, Mr. Greg Skordas, Mr. Daryl Sam

12   and Ms. Kaytlin Beckett.

13            MR. SKORDAS:  That is correct, Your Honor.

14            THE COURT:  All right.  I have a briefed motion on

15   the request for a continuance by the defendant.  Does one of

16   you want to talk about that?

17            MS. BECKETT:  Your Honor, at this point in time we

18   would still like to file a reply brief on that.  I believe

19   the government just filed their responsive brief yesterday,

20   and we had talked with Mr. Gadd about having Eric Wheeler

21   here when that motion is argued so that he can give some

22   context to that.

23            THE COURT:  About what?

24            MR. SKORDAS:  Mr. Wheeler -- Eric Wheeler, he

25   would like to be here for that hearing.  He can give some
```

EXHIBIT 1

1  context to the issue of the forensic review and how long it
2  is actually going to take to process that data, because the
3  information that has currently been provided is not
4  accurate, and we would request we be able to argue that on
5  Friday. I believe we still have hearing time that should be
6  available on Friday if that is possible, Your Honor.
7           THE COURT: Will he be here Friday?
8           MS. BECKETT: Yes, he can be here Friday.
9           THE COURT: All right. So you want that heard
10 Friday?
11          MS. BECKETT: That would be preferable, yes, Your
12 Honor.
13          THE COURT: That is okay with me.
14          Is that okay with you?
15          MR. GADD: Yes, Your Honor.
16          THE COURT: So Friday we'll argue that and hear
17 testimony from Mr. Wheeler.
18          MS. BECKETT: Correct, Your Honor.
19          THE COURT: All right. What do you want to take
20 up next?
21          MR. GADD: We're ready to lay foundation for the
22 contested exhibits if the Court is willing to hear that.
23          THE COURT: What about the motions in limine that
24 are outstanding?
25          MR. GADD: I'm ready to argue on all of them.

```
 1                 THE COURT:  Do you care about the order?
 2                 MR. SKORDAS:  No, Your Honor.
 3                 THE COURT:  We talked at the last hearing about
 4     the government's motion regarding sentence, the sentences or
 5     possible sentences.
 6                 Do you want to say anything else about that?
 7                 MR. GADD:  No, sir.
 8                 MS. BECKETT:  No, Your Honor.
 9                 THE COURT:  Ms. Beckett?
10                 MS. BECKETT:  No.
11                 THE COURT:  All right.  I will tell you how I feel
12     about that.  I think the government's chart on page 7 of its
13     reply brief is correct.  That is what I will permit and/or
14     prohibit.
15                 Do you see the chart?
16                 MS. BECKETT:  I don't know if I have that in front
17     of me, Your Honor.  I apologize.
18                 THE COURT:  I can't hear you.
19                 MS. BECKETT:  I don't know that I have that in
20     front of me, Your Honor.  I apologize.
21                 THE COURT:  Now, with respect to the government's
22     motion to strike the expert, Kelly Shafto, the current
23     situation is not satisfactory, but is he going to -- he or
24     she?
25                 MR. SKORDAS:  She.
```

```
 1              THE COURT:  Is she going to provide a report?
 2              MS. BECKETT:  Your Honor, I believe it is her
 3    intention to do so.  I have not received that report from
 4    her, but essentially what she has been charged with and what
 5    she has been doing in this case involves interviewing the
 6    witnesses and, more specifically, involving the death
 7    resulting count and some of the information that has come to
 8    our attention, and I believe she does intend to provide a
 9    report on that.
10              THE COURT:  Well, can you get the government a
11    report at least by, say, a week from now?
12              MS. BECKETT:  Yes, Your Honor.  That is not a
13    problem.
14              THE COURT:  And then do we need to have a further
15    hearing or you can consult with them if you have some issues
16    with the report?
17              MR. GADD:  If we could plan on that -- we'll
18    consult with them, and we will look at the report and
19    consult with them, and I think worst case scenario, we may
20    ask the Court for a Daubert hearing on one of the afternoons
21    of trial.
22              THE COURT:  All right.
23              MR. GADD:  Thank you.
24              THE COURT:  Motion to strike Dr. Terry Haddix.
25    Again, we need a report.
```

```
 1              MS. BECKETT:  Your Honor, at this time I don't
 2   think we're going to be calling Dr. Haddix as a witness.  It
 3   is my understanding that we will not be calling her.
 4              THE COURT:  I guess that takes care of that motion
 5   then.
 6              MS. BECKETT:  Yes, Your Honor.
 7              THE COURT:  Motion to strike Eric Wheeler.  He is
 8   going to be testifying in a couple of days; is that right?
 9              MS. BECKETT:  I apologize, Your Honor.  What was
10   that?
11              THE COURT:  Eric Wheeler is going to be here
12   testifying Friday?
13              MS. BECKETT:  Correct.
14              THE COURT:  Do we need a Daubert hearing with him?
15   There is no indication in what has been disclosed so far
16   about his experience with the dark web for instance.
17              MR. GADD:  I would like a hearing.  What I worry
18   about is the one-week delay in his processing Luke Paz's
19   computer may make it so he is not fully able to testify at
20   Friday's hearing.
21              On the other hand, nothing between now and then
22   will change his relationship and his expertise on things on
23   the dark net, and so if we could perhaps use his Friday
24   testimony as a Daubert hearing and then come back to it if,
25   for example, he comes up with some novel or untested theory
```

```
 1   as it relates to computer forensics and Mr. Paz's computer,
 2   that would be our request.
 3             MR. SKORDAS:  That is fine.
 4             THE COURT:  That makes sense, doesn't it?  You're
 5   okay with that?
 6             MR. SKORDAS:  Yes.
 7             THE COURT:  All right.  Do we start with that on
 8   Friday, first thing, at 9:00?
 9             MR. SKORDAS:  I think that we should be done with
10   the other parts of your presentation by Friday so we
11   probably can start right away.
12             MR. GADD:  Worst case scenario, we have one
13   witness who is serving a search warrant in Las Vegas who was
14   planning to be back for Friday morning, but I have a feeling
15   that his exhibits may be admitted today and we won't need
16   him Friday.
17             THE COURT:  Okay.  Let's see.  Defendant's motions
18   regarding the dark web, P.G.P., sigaint e-mail, dark net
19   marketplace, AlphaBay, et cetera, what do you want to say
20   about that?
21             MR. SAM:  Your Honor, with the information that we
22   have been getting in and the hard drive that came in
23   yesterday, we would like by the end of next week to respond
24   to that.
25             THE COURT:  To renew or respond to that motion?
```

| | |
|---|---|
| 1 | All right. But it is your motion. Do you mean bolster it? |
| 2 | MR. SAM: Yes, to supplement what we have filed. |
| 3 | THE COURT: Mr. Gadd? |
| 4 | MR. GADD: I just wanted to make sure we are all |
| 5 | on the same page. The Court's referring to the motion filed |
| 6 | as document 171 on December -- |
| 7 | THE COURT: I am. |
| 8 | MR. GADD: -- 1st, so six and a half months ago |
| 9 | roughly? |
| 10 | MR. SAM: I'm sorry. I'm getting mixed up. The |
| 11 | exhibit -- the motion for the extension on exhibits, we did |
| 12 | provide the government the exhibits last Friday. Maybe I |
| 13 | am -- |
| 14 | THE COURT: You two better talk for a minute. |
| 15 | MR. SAM: Your Honor, if we could reserve that |
| 16 | until Friday -- |
| 17 | THE COURT: Friday? |
| 18 | MR. SAM: Yes, if there is any oral argument to be |
| 19 | made on that. |
| 20 | THE COURT: I think preliminarily it looks to me |
| 21 | as though, assuming the government can authenticate the |
| 22 | documents through their agents, which it appears they would |
| 23 | do, then that motion would be denied. |
| 24 | MR. SAM: That would be my understanding too, Your |
| 25 | Honor, if there is something that can't be authenticated -- |

```
 1              THE COURT:  All right.  Let's see.  You're
 2   objecting to Guy Gino's testimony?
 3              MR. GADD:  That was part of the same motion, that
 4   document 171.  It is partway --
 5              THE COURT:  That is the second part.
 6              MR. GADD:  Yes, sir.
 7              THE COURT:  I guess right now I don't see why he
 8   can't do what the government proposes that he do and testify
 9   to, so I'm denying that motion preliminarily.  I will listen
10   to more argument if you want to.
11              MR. SAM:  Your Honor, that would be acceptable to
12   us at this point.  If there is anything with authentication
13   that we object to, we'll raise it.
14              THE COURT:  Thank you.
15              Motion to exclude ecurrency dollar amounts.  I
16   don't see any reason to do that except that I don't know
17   what the auction value would have to do with anything.  That
18   is not relevant, is it?
19              MR. GADD:  The defense has suggested in their
20   reply that perhaps we should be limited to the value on the
21   date of the seizure, the value on the date of acquisition
22   or -- I think it was just those two.  Or the value on the
23   date of his arrest.  I think those were the three that they
24   were interested in.  As we looked at it, we thought that is
25   fair and we're happy to limit ourselves to that.
```

EXHIBIT 1

```
 1              THE COURT:  All right.  That makes sense to me.
 2   You get a partial grant and a partial denial on that.
 3              MR. GADD:  I will say, so they are not caught off
 4   guard, that the value on the date of the seizure is also
 5   substantially high.  Bitcoin, as you can see from our
 6   response, Bitcoin was trending up when we seized it and was
 7   on its way back down when we sold it and is still going to
 8   be quite high.  I think we can ameliorate all of these
 9   concerns by just explaining to the jury that exchange rates
10   fluctuate and they shouldn't hold it against Mr. Shamo that
11   he happened to make a very good illicit investment.
12              THE COURT:  Now, did you just say something
13   different than what you had previously agreed to in your
14   prior statement?
15              MR. GADD:  No.  The agreement stays.  I don't want
16   to catch them off guard when they hear the number or the
17   value on the date that it was seized because it will also be
18   high.  I didn't look it up last night, but it will be high.
19              THE COURT:  You have agreed on the three dates.
20         Ms. Beckett?
21              MS. BECKETT:  Yes, Your Honor.
22         I would just like to clarify.  I think our request
23   in our motion also included that we would like substantial
24   information on how they are establishing the amounts that
25   they are referencing, whether that be the historical data or
```

```
 1   somebody who can actually talk about the historical data
 2   itself in terms of the exchange rates for Bitcoin.  So if
 3   they are going to talk about the actual amount at the time
 4   it was seized, we would like to have somebody on the stand
 5   who can actually talk about the historical amount and what
 6   the exchange rate was at that point in time.  That would be
 7   our request.  Or if they want to do it at the point in time
 8   of the transaction, we would need that information still.
 9             MR. GADD:  We'll lay that foundation testimony
10   through our expert, Guy Gino.
11             THE COURT:  Now, when you were here before I think
12   we talked about the people who are now not available to
13   testify because they are not alive and that you are not
14   claiming that the defendant has any responsibility for,
15   correct?
16             MR. GADD:  Yes.
17             THE COURT:  We'll give a limiting instruction on
18   that, so that it is clear that he is not being charged with
19   those deaths.
20             MS. BECKETT:  Your Honor, on that I believe we
21   also agreed we would not refer to those as overdose deaths,
22   just simply deceased or unavailable to testify or be
23   interviewed.  I believe that was the discussion that
24   occurred.
25             THE COURT:  I think it was.
```

```
 1                Mr. Gadd?
 2                MR. GADD:  That is my memory as well.
 3                THE COURT:  Let's talk about the pictures for a
 4      minute.
 5                MS. BECKETT:  I think we laid a significant amount
 6      of testimony on this before, but our concern with the photos
 7      that have been proposed, even the narrowed number, is they
 8      are not necessary and they are fairly gruesome and I believe
 9      those were provided to the Court.
10                THE COURT:  Yes.
11                MS. BECKETT:  Our concern is that showing those
12      photos when there is not a necessity for the information
13      that they contain is unnecessary and, as we outlined, very
14      much unduly prejudicial.
15                THE COURT:  Thank you.
16                MR. GADD:  As I think about the attorneys on the
17      case, I am going to guess most of us have had cases with
18      photos far worse.  That has certainly been my experience.  I
19      suspect that is Mr. Skordas's experience.  These just are
20      not that bad.
21                We have narrowed it down to three.  They have
22      significant, important, probative value to our case, and
23      specifically to a very difficult aspect of our case and that
24      is proving but for causation of death.  These photos were
25      relied on specifically by our expert, Dr. Hail.  Not only
```

1  did she rely on them, she even included the close-up picture
2  in her report.  This is some of our very best evidence that
3  Fentanyl was the but for cause of death.
4              Her role is educational.  She is going to try to
5  teach the jurors in the limited time she has on the stand
6  that you can tell, through a combination of physiological
7  effects and an autopsy and through years and years of
8  training and experience and education and studying it, what
9  drugs killed someone.  The physiological effects are
10 apparent in the photos.  I don't see a way for us to prove
11 it without the photos.  We have tried to limit it to just
12 these three.
13             THE COURT:  Well, she could describe it, couldn't
14 she?
15             MR. GADD:  It is just not the same.  You know, I
16 think colloquially --
17             THE COURT:  Colloquially.
18             MR. GADD:  -- we say a picture is worth one
19 thousand words and certainly that is the case here.  We have
20 cited a number of examples where courts allowed pictures far
21 worse than these in order to help a forensic expert explain
22 the nature and the cause of death.
23             THE COURT:  Ms. Beckett?
24             MS. BECKETT:  Your Honor, I think there are two
25 issues that we're looking at.  First, we have already

1    conceded that we are not bringing in another expert who is
2    going to argue the issue of whether or not it was a Fentanyl
3    overdose.  That I think negates part of the government's
4    argument.
5            The other side of that is that Ms. Hail, the
6    expert who is referring to these photos, she didn't conduct
7    any examination of the victim in the case.  She reviewed
8    reports.  She can discuss those reports.  She can discuss
9    those reports the same way she can discuss those photos
10   without giving those to the jury.
11           The flip side of that, Your Honor, is that there
12   are causational elements you have to look at for a death
13   resulting count and the government is ignoring the other
14   side of that.  Without going too far down the road of what
15   evidence we will be bringing forward in that regard,
16   essentially what they are guaranteeing by showing these
17   types of photos to the jury is nullifying the other side of
18   that argument by seeing a young man who is deceased, an up
19   close photo of a deceased individual's face in two separate
20   shots, and then his body on the floor next to a bed after it
21   has been moved.  I don't see how those have any other impact
22   than unduly prejudicial.  I don't think they are necessary
23   and I think Your Honor is correct in pointing out that Ms.
24   Hail can simply say what she saw and what she reviewed
25   without showing that to the jury.

```
 1              THE COURT:  One of the photos I would call a
 2   proximity photo and I don't have any problem with that.
 3   Preliminarily, I'm inclined only to let that one in, but I
 4   will keep thinking about that.
 5              What do you want to do next?
 6              The proximity photo sort of sets the room up.  I
 7   don't think it is unduly prejudicial.
 8              MR. GADD:  Is that the photo that just shows the
 9   lower half of his body?
10              The defendants provided the United States with its
11   exhibit list and we appreciate them doing that.  To the
12   extent that the United States has some specific objections
13   to the exhibits related to foundation, how would the Court
14   like us to proceed?  Should we file those?  Should we
15   address it at this hearing?  What is the best path forward?
16              THE COURT:  Well, we can address it now if you
17   want.  It might make more sense to file your objections,
18   though.
19              MR. GADD:  I will do that.  I think it would help
20   to see the foundation.  I hate to object saying, well, there
21   is no foundation when they have not had a chance to put any
22   on, but I think there are significant foundation objections,
23   and so I would like to go through those.  I'm happy to put
24   it in writing and maybe that is the best path forward.
25              THE COURT:  It may be, but if you want to proceed,
```

EXHIBIT 1

```
 1   I will let you.
 2           MR. GADD:  I will do it in writing.  That makes
 3   more sense.
 4           THE COURT:  All right.
 5           MR. GADD:  On this green sheet of paper I have
 6   what has been the standing plea offer from the United
 7   States.  I don't want to get into it much, but after a pair
 8   of Supreme Court cases a couple years ago, Lefler and Frye,
 9   it became incumbent on the government shortly before trial
10   to just quickly put on the record a few things.
11           Mr. Shamo now has a chance to look at that and it
12   will show his case number, today's date, and then the very
13   short prior offer and it is just three lines.  I wonder if
14   the Court would be willing to just inquire briefly and
15   ensure that he has received the offer, that he had a chance
16   to consider it and ask any questions that he wanted to his
17   attorney, and that he has a reason, in his mind a good
18   reason to reject the offer, and then with those three things
19   covered, the only thing I would add is that the offer will
20   expire at the end of the day today.
21           THE COURT:  Do you have any objection?
22           MS. BECKETT:  I would like to briefly make a
23   record in that regard, Your Honor.
24           THE COURT:  All right.
25           MS. BECKETT:  There has been conversation back and
```

```
 1   forth between our office and the U.S. Attorney's Office
 2   regarding this particular offer, and we actually
 3   counteroffered them at a certain point with a range that was
 4   different than this.  The range I believe that we suggested
 5   was between 28 -- down to 28 or 25 years and they are still
 6   allowed to argue up to life in prison which, in our opinion,
 7   is commensurate with some of the other coconspirators who
 8   are on the same level of culpability or that the government
 9   has alleged are on the same level of culpability as
10   Mr. Shamo.
11            MR. GADD:  I don't mean to interrupt other than to
12   say my preference would be that we not go into the details
13   and the specifics of the offer consistent with Rule 410, but
14   just for Mr. Shamo to say that he has received the offer, he
15   has had a chance to consider it and ask any questions that
16   he would like to to his attorneys and that in his mind he
17   has a good reason to reject the offer.  That is all.
18            MS. BECKETT:  I see no reason to not make a record
19   of that, Your Honor.  There is specific information that
20   has been brought before this Court right now.  We are making
21   a record in that regard, but we are not objecting to an
22   inquiry as to whether or not Mr. Shamo has had an
23   opportunity to question his counsel and inquire about this.
24            MR. SKORDAS:  Mr. Shamo, you received the offer?
25            MR. SHAMO:  Yes.  I just received the offer.
```

EXHIBIT 1

```
 1                THE COURT:  And do you understand it?
 2                MR. SHAMO:  Yes, I understand it.
 3                THE COURT:  All right.  Have you had a chance to
 4    question your lawyers about it?
 5                MR. SHAMO:  I'm sorry?
 6                THE COURT:  Have you had an opportunity to
 7    question your lawyers about it, to talk to them about it?
 8                MR. SHAMO:  Yes, I have.
 9                THE COURT:  In your mind, and you don't need to
10    tell me any reasons, but in your mind at least to this point
11    you feel like you have sound reasons for not accepting it?
12                MR. SHAMO:  Yes.
13                THE COURT:  Thank you.
14                MR. GADD:  Thank you, Your Honor.
15                I notice the defendant said that he had just
16    received the offer.  I thought we might want to clarify just
17    for the record that he received this green sheet of paper
18    that we'll put into our case file and hopefully never have
19    to use again, but the offer was made approximately six
20    months ago and I believe that is when he first received the
21    offer.  I just wanted to clarify.
22                THE COURT:  Is that essentially correct, you
23    received it before today?
24                MR. SHAMO:  Yeah.  It is one that was discussed.
25                THE COURT:  Okay.  Thank you.
```

```
 1              MR. GADD:  Other than calling witnesses and laying
 2    foundation for exhibits, I don't have anything else to
 3    address.
 4              Thank you.
 5              THE COURT:  What about you, Mr. Skordas?
 6              MR. SKORDAS:  No, Your Honor.
 7              THE COURT:  Well, let's call them then.
 8              (Proceedings continue.)
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```