Gregory G. Skordas (#3865)
Kaytlin V. Beckett (#16257)
**SKORDAS & CASTON, LLC**
560 South 300 East Suite 225
Salt Lake City, UT 84111
Telephone: (801) 531-7444
Facsimile: (801) 665-0128
gskordas@schhlaw.com
kbeckett@schhlaw.com

Daryl P. Sam (#8276)
Daryl P. Sam, PLLC
5955 South Redwood Road, Suite 102
Salt Lake City, Utah, 84123
Telephone: (801) 506-6767
Fax: (801) 386-5476
daryl.sam@gmail.com

Attorneys for Defendant Aaron Shamo

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| UNITED STATES OF AMERICA, | MOTION TO DISMISS |
|---|---|
| Plaintiff, | |
| v. | Case No. 2:16-CR-00631 DAK |
| AARON MICHAEL SHAMO, et. al., | Judge Dale A. Kimball |
| Defendant. | |

Aaron Michael Shamo, through his counsel of record, herby moves the Court to dismiss this case based on the prosecutorial misconduct pursuant to the Due Process Clause of the U.S. Constitution. In support, the Defendant alleges as follows:

1. On November 26, 2018, defense provided the Government with their witness list when trial was anticipated to start January 2019.

2. On April 16, 2019, defense provided the Government with their witness list again.

3. Both witness lists had Sasha Grant, Miles Penrose, and Gabriel Noriega

4. On June 19, 2019, there was an email exchange between defense and Mr. Gadd and defense stating the government was willing help prevent witnesses for the defense of invoking their Fifth Amendment Right by offering defense's witnesses plea deals.

5. On June 10, 2019, Ana Gabriela Noriega was served with felony information.

6. On July 11, 2019, Ms. Noriega entered into a plea agreement.

7. On August 15, 2019, the government realized that Sasha Grant was in the courtroom and brought it to defense's attention because she was listed as a witness for defense. The Government brought it to defense's attention and defense asked Ms. Grant to leave the courtroom due to defense's intention in calling her as a witness.

8. On August 19, 2019, defense sent out subpoenas to a constable to serve witnesses

9. On August 23, 2019, Scott Williams proffered the record that his client, Mr. Penrose, was invoking his Fifth Amendment Right.

10. On August 26, 2019, Ms. Grant met with defense to go over what was anticipated for the following day when she would be testifying for the defense.

11. Marlin Grant, counsel for Ms. Grant, was conferenced into the meeting.

12. Later that same day Mr. Grant was in communication with the government and the government indicated to Mr. Grant that Ms. Grant did not have immunity to testify and that she only had immunity when interviewing with the government.

13. Mr. Grant was under the impression that his client, Ms. Grant, was granted immunity for all proceedings related to that testimony.

14. On August 27, 2019, Mr. Grant proffered to the court that Ms. Grant would be invoking her Fifth Amendment Right and not testifying for Mr. Shamo.

15. On August 27, 2019, Mr. Crane, attorney for Gabriel Noriega, also proffered for the record that his client would also be invoking her Fifth Amendment Right and would not testify on behalf of Mr. Shamo.

16. Ms. Noriega's plea agreement was very limited and did not preclude the possibility of Ms. Noriega being charged in another jurisdiction or future indictments of any other offense other than drug charges.

## ARGUMENT

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor . . . ." U.S. Const. Amend. VI. Prosecutorial misconduct that prevents a Defendant from presenting a defense violates a Defendant's Sixth Amendment. *Id*.

"The right of a defendant to establish a defense by presenting his own witnesses is a fundamental element of Due Process". *United States v. Crawford*, 707 F.2d 447,449 (10th Cir. 1983) (*citing Webb v. Texas*, 409 U.S. 95 (1972)). In *Crawford*, the court held that the actions of the Assistant United States Attorney did not deprive the defendant of a fair trial when he indicated that many witnesses for the defense were under investigation in other jurisdictions. *Id*. The Government made the statement outside the presence of the jury, after the government had rested but before defense presented their case. *Id*. All of defenses witnesses testified and no witnesses invoked their Fifth Amendment Right during cross-examination. The District court indicated that the Assistant United States Attorney handled the disclosure proper and a professional manner.

In this case, the Government has interfered substantially with defense's witnesses by discouraging them to testify. "'Interference is substantial when the government actor actively discourages a witness from testifying through threats of prosecution, intimidation, or coercive badgering'". *United States v. Portillos*, 714 Fed. Appx. 899, 893-894 (10th Cir. 2017) (*quoting United States v. Serrano*, 406

F.3d 1208, 1214 (10th Cir. 2005)). On August 27, 2019, Mr. Gadd indicated in court that he tried preventing the problem of witnesses for the defense to invoke their Fifth Amendment Right by letting defense know that he would try to work out plea deals for defense's witnesses. Mr. Gadd's actions were the opposite of making sure witnesses did not invoke their Fifth Amendment Right.

The only witness for the defense that the government did provide a deal to was Ana Gabriela Noriega. Ms. Noriega still ended invoking her Fifth Amendment Right because she did not know whether she could potentially face charges in other jurisdictions. The plea agreement that Ms. Noriega entered into was extremely vague and only protected her from minimal indictments. Ms. Noriega faces the possibility of being indicted for any offense other than drug offenses. Also, her plea deal specifically states that Ms. Noriega's plea agreement is solely between her and the United States Attorney for the District of Utah and does not bind any other federal, state, or local prosecuting, administrative, or regulatory authorities. The Government was able to indicate Ms. Noriega's involvement and make her out to be Mr. Shamo's personal executive assistant. That role is particularly important as she could be deemed one of the five individuals Mr. Shamo is alleged to have exercised managerial authority over. On more than one occasion, the Government quoted messages between Mr. Shamo and Ms. Noriega. Yet Mr. Shamo was not able to call her as a witness and undercut the Government's assertion that she played some major role in the drug trafficking organization as his executive assistant.

Mr. Penrose was on defense's witness list and was never provided a plea deal or immunity for his testimony. However, Mr. Penrose has been the ongoing target of grand jury investigation since 2018 and the Government had been in contact with his attorney, Mr. Williams, about potential charges. Mr. Penrose was another person that the government indicated throughout their case-in-chief. Specifically, it was indicated many times that Mr. Penrose was involved with money laundering and funding the drug trafficking organization from the outset alongside Mr. Shamo. Yet again Mr. Shamo was not able to call Mr. Penrose to prove otherwise or undercut the Government's theory that the Mr. Penrose worked at the behest of Mr. Shamo as opposed to under his own discretion and benefit.

Egregious interference continued when Ms. Grant invoked her Fifth Amendment Right. Similar to Mr. Penrose and Ms. Noriega, Sasha Grant was on every witness list provided to the Government from the defense. On August 15, 2019, Ms. Grant appeared in court to hear Mr. Crandall testify. The Government indicated she was in the courtroom and informed defense counsel because they knew she was a witness for defense and the exclusionary rule was invoked. Defense asked Ms. Grant to leave and defense informed the Government once again that the defense still anticipated calling her as a witness. August 26, 2019, Ms. Grant met with defense to go over her prior statements made to the Government during her June/July 2017 interviews. That same night the Government informed her attorney, Marlin Grant, that she did not have immunity from testifying all though she was granted immunity when interviewing with agents in both interviews in in 2017. Mr. Grant had all along been under the impression that Ms. Grant's immunity extended to all proceedings so long as her testimony was consistent with the statements made during her interview when the grant of immunity was given. The Government has no valid reason as to why immunity could not have been granted for her to testify for defense because there was plenty of notice as to her being a witness and defenses intention to calling her as a witness. The Government subsequently indicated there was simply not enough time to get a grant of immunity in place prior to her testimony.

Instead of helping the government made sure to inform Ms. Grant that her immunity was only valid for the time she interviewed with agents the night before testifying for the defense. Ms. Grant was also indicated throughout the government's case-in-chief indicating how she was the reason why Mr. Crandall was not part of the drug organization after Ms. Grant and Mr. Crandall started traveling the world. Ms. Grant's prior statements to agents indicated the opposite. In fact, Ms. Grant's statements to agents would have directly contradicted the Government's star witness- Drew Crandall in many respects. Namely, Ms. Grant's testimony was necessary to prove that Mr. Crandall's involvement perhaps never fully ended as he remained in contact with Mr. Shamo; Mr. Crandall had a continual drug habit while traveling abroad; Mr. Crandall would have been smart enough to keep his name off of the bitcoin wallets

because he understood the legal ramifications; Mr. Crandall once again became heavily involved in the organization in a more hands-on capacity as early as May 2016. That date is of particular importance as Mr. Crandall was not charged with the death resulting count due to his statements that he was not re-involved until July 1, 2016. Nonetheless, Mr. Shamo was unable to call Ms. Grant as a witness despite the Government's full foreknowledge that she may have criminal exposure if such immunity was not granted in accordance with her attorney's prior understanding.

The Government has, at every step, violated Mr. Shamo's fundamental right to establish a defense by presenting his own witnesses and fully confronting the witnesses brought against him. The Government did not simply indicate witnesses being under investigation in other jurisdictions, but rather intimidated witnesses to not testify for Mr. Shamo. The direct result of those intimidation tactics prevented Mr. Shamo from in fact mounting an effective defense to the charges leveled against him.

WHEREFORE, the defendant, Aaron Michael Shamo, moves the Court to dismiss this matter in its entirely based on constitutional violations as analyzed above.

Respectfully Submitted this 28th day of August, 2019.

/s/ Gregory G. Skordas_____
Gregory G. Skordas

/s/ Kaytlin V. Beckett_____
Kaytlin v. Beckett

/s/ Daryl P. Sam_____
Daryl P. Sam

## CERTIFICATE OF SERVICE

I hereby certify that on the August 28, 2019, I electronically filed a true and correct copy of the foregoing **MOTION TO DISMISS**, with the Clerk of the Court using CM/ECF system, which sent notification of such filing to the following:

S. Michael Gadd
mgadd@agutah.gov

Vernon G. Stejskal
Vernon.stejskal@usdoj.gov

Kent Burggraaf
kburggraaf@agutah.gov

                                           */s/ Gabriela Mena*

                                           SKORDAS & CASTON, LLC