IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>AARON MICHAEL SHAMO,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No.  2:16CR631DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendant Aaron Michael Shamo's Motion for a Mistrial and Supplement [Docket No. 272].  Under Rule 26.3 of the Federal Rules of Criminal Procedure, "[b]efore ordering a mistrial, the court must give each defendant and the government an opportunity to comment on the propriety of the order, to state whether that party consents or objects, and to suggest alternatives." Fed. R. Crim. P. 26.3.  The government has filed a memorandum in opposition to Defendant's Motion for a Mistrial.  Therefore, the court considers the matter fully briefed.

"The Supreme Court has held that 'courts of juristic may discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act or the ends of public justice would otherwise be defeated.'" *United States v. Taylor*, 605 F.2d 1177, 1178 (10th Cir. 1979) (citation omitted).  "The Supreme Court has refused to adopt a mechanistic formula for the presence of manifest necessity, and has repeatedly reiterated that trial judges must be accorded broad discretion to declare a mistrial."

*Walk v. Edmondson*, 472 F.3d 1227, 1236 (10th Cir. 2007).  Although the Federal Rules of Criminal Procedure offer little guidance on when a judge should grant a mistrial, "the district court has discretion to grant a mistrial only when a defendant's right to a fair and impartial trial has been impaired."  *United States v. Meridyth*, 364 F.3d 1181, 1183 (10th Cir. 2004).

In this case, in relation to a pretrial motion in limine, the court and counsel discussed the parameters for evidence regarding Pharma-Master customers, other than R.K., who were unavailable to be interviewed by case agents because they were dead.  The court and counsel recognized that the government needed to prove that certain customers alleged in the Indictment were actual people who received product.  However, the government agreed that it would not tie the deaths of these Pharma-Master customers to Defendant and not mention that their deaths were from drug overdoses.  Defendant asks the court to declare a mistrial and discharge the jury based on Agent Virginia Keys' testimony regarding customer deaths, Agent Keys' alleged crying on the stand, customer G.K.'s family's presence in the courtroom, counsel's reference to the family presence, the family's alleged crying during testimony, the government's assistance to the customers' families who wanted to attend trial, and Luke Paz's Statement in Advance of Plea referencing Pharma-Master customer deaths.

Agent Keys' testimony did not violate the court's order or the parties' agreement.  The court and counsel agreed that agents could testify that the customers were unavailable because they were dead–the agents just could not tie the death to Defendant and could not say the death was a drug overdose.  Agent Keys never testified that G.K.'s death was an drug overdose.  In addition, counsel for the United States clarified with Agent Keys that Defendant was not charged with G.K.'s death, he was only being referenced as one of Defendant's customers.  With respect to the

2

other customers, Agent Keys only testified that the customer identified was a real person. Moreover, the jury will be generally instructed that they are not to be concerned with anything that is not charged. The testimony did not unduly prejudice Defendant. The United States had the right to explain why the agent did not speak directly to the customer alleged in the Indictment. There is probative value in the investigative techniques used by the agents. The United States needs to prove that the charges have been thoroughly and competently investigated.

Out of an abundance of caution, the United States offered to give a curative instruction but Defendant declined the inclusion of such an instruction, claiming that it would only draw more attention to the problem. "Where evidence is later ruled inadmissible, a cautionary instruction is ordinarily sufficient to cure any alleged prejudice to the defendant and declaring a mistrial is only appropriate where a cautionary instruction is unlikely to cure the prejudicial effect of an error." *United States v. Peveto*, 881 F.2d 844, 859 (10th Cir. 1989). In this instance, the court does not believe the curative instruction is necessary. Agent Keys' testimony was not contrary to the court's prior rulings, was not more prejudicial than probative, and is not grounds for a mistrial.[1]

As to the presence of G.K.'s family in the courtroom, customers' families had a right to attend the trial like any member of the public. Trials are public proceedings. They also had a right to be present under the Crime Victim's Rights Act, 18 U.S.C. § 3771. Whether the victim coordinator at the U.S. Attorney's office assisted some of the families in being able to attend is irrelevant. The victim coordinator is only trying to comply with the Crime Victims' Rights Act. Counsel's reference to G.K.'s family's presence in the courtroom was not unfairly prejudicial. It

---

[1] The jury also heard testimony about R.K.'s roommate G.L.'s death, but the questions about his death were asked by defense counsel. Although he was also a Pharma-Master customer, the evidence regarding his death is not the subject of Defendant's concerns.

merely confirmed that they were the family members the agent spoke with in her investigation. Counsel was not acting in bad faith and acknowledging the family was inconsequential given that Agent Keys clarified that Defendant was not charged with the death of G.K., he was mentioned only because he was one of Defendant's customers. Furthermore, the alleged crying by G.K.'s family in the gallery and Agent Keys while she was testifying were not so significant that they were a breach of the court's decorum standards. In fact, the United States' counsel and members of the court's staff did not notice the alleged crying. However, witnesses and spectators are only human and occasionally they show emotion. All of Defendant's witnesses cried on the stand more visibly and noticeably than Agent Keys or the families in the gallery. Defendant can receive a fair trial without perfectly whitewashing the facts and circumstances surrounding the investigation and the consequences of the drug distribution. None of these courtroom decorum issues rise to the level of justifying a mistrial.

With respect to Luke Paz's Statement in Advance of Plea referencing customer deaths, the United States agreed to redact that portion of the exhibit before it is given to the jury. The number of deaths was previously redacted. However, the entire paragraph will now be redacted before the exhibit is given to the jury. The United states did not question Paz about or publish this portion of his plea agreement to the jury during trial. Accordingly, this exhibit does not form the basis for a mistrial.

"[M]otions for mistrial . . . call for an examination of the prejudicial impact of an error or errors when viewed in the context of the entire case." *United States v. Gabaldon*, 91 F.3d 91, 94 (10th Cir. 1996). The court does not believe that any of Defendant's alleged grounds for mistrial constitute errors. However, even if they did, the court does not believe that in the context of the

entire trial any of them individually or all of them cumulatively create a prejudicial impact against Defendant. Therefore, the court concludes that Defendant has failed to demonstrate any grounds for a mistrial. Accordingly, Defendant's Motion for a Mistrial [Docket No. 265] is DENIED.

DATED this 29th day of August, 2019.

BY THE COURT:

DALE A. KIMBALL
United States District Judge