## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        **Plaintiff,**<br><br>vs.<br><br>AARON MICHAEL SHAMO,<br><br>        **Defendant.** | **MEMORANDUM DECISION<br>AND ORDER**<br><br>**Case No.  2:16CR631DAK**<br><br>**Judge Dale A. Kimball** |

This matter is before the court on the United States' Motion for Restitution [ECF No. 360] as a part of Defendant Aaron Michael Shamo's Judgment. The parties fully briefed the motion, and the court held a hearing on the motion on November 19, 2020. At the hearing, the United States was represented by Michael Gadd, Vernon Stejskal, and Kent Burggraaf, and Defendant was represented by Gregory Skordas. Defendant waived his right to be present at the hearing.

On August 30, 2019, a jury convicted Defendant of Engaging in a Continuing Criminal Enterprise and, as predicate offenses to that count, illegally distributing and conspiring to distribute Fentanyl. These convictions authorize the court to order restitution to victims under 18 U.S.C.A. § 3663(a).

Under Section 3663(a)(2) a victim is defined as "a person directly or proximately harmed as a result of the commission of an offense for which restitution may be ordered." *Id.* § 3663(a)(2). Such offenses include "an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity." *Id.* If the victim is deceased, "the legal guardian of the victim or

representative of the victim's estate, another family member, or any other person appointed as suitable by the court, may assume the victim's rights." *Id.*

In interpreting a companion restitution statute that similarly requires direct and proximate cause, the Supreme Court explained that the proximate cause requirement has two components: a factual, causal connection between the offense and the injury; and a limitation on recovery for remote damages. *Paroline v. United States*, 134 S. Ct. 1710, 1719 (2014). Restitution does not require a "strict but-for causation" because that would undermine Congressional intent to compensate crime victims. *Id.* at 1727.

The United States has the burden to prove the victims' losses by a preponderance of the evidence. 18 U.S.C.A. § 3664(e); *United States v. Richard*, 738 F.2d 1120, 1122 (10th Cir. 1984). But an exact calculation of actual loss is not required. *United States v. Davis*, 60 F.3d 1479, 1485 (10th Cir. 1995). The court should seek an "expeditious, reasonable determination by resolving uncertainties with a view toward achieving fairness to the victim." *Id.*

In this case, the United States seeks $132,466.97 in total restitution to the following victims and victims' representatives in the following amounts:

$47,226.08 to United Insurance Group for insured damages to the Titian Way house that Shamo rented and from which he pressed pills and ran his drug operations;

$12,724.32 to J.L., owner of the home at Titian Way and Shamo's landlord, for damages to the house not covered by insurance;

$18,193.00 to R.R., an acquaintance of Shamo, who stored personal property at the Titian Way house, for the replacement value of the personal property that could not be remediated;

$24,625.00 to T.K., the parent of G.K. who bought Fentanyl from Shamo's online Pharma-

Master store and died, for funeral and related expenses for G.K.; and,

$29,698.57 to L.V., the parent of C.V. who bought Fentanyl from Shamo's online Pharma-Master store and died, for educational loans that C.V. will not be able to repay.

### A.  United Insurance Group and J.L.

After Shamo was arrested at the Titian Way property, the Health Department condemned the house and required remediation.  Shamo does not dispute that his manufacturing of fake Oxycodone pills with Fentanyl at the Titian Way house directly caused the property damage to the house.  Therefore, the court awards restitution to United Insurance Group in the amount of $47,226.08 and to J.L. in the amount of $12, 724.32.

### B.  R.R.

R.R., Luke Paz's fiancee, Shamo's girlfriend, and Shamo's parents all told investigative agents that R.R. had stored personal property at the Titian Way house.  Shamo's Fentanyl manufacturing at the Titian Way house directly caused her personal property to be condemned and destroyed when the house was condemned.  R.R. initially gave the United States a general estimate of her losses, but the United States asked her to create a spreadsheet itemizing her lost personal property with links to similar items currently available for sale.  That list is the basis of her request for $18,193.00.

Shamo takes issue with the cost of some of the items on R.R.'s spreadsheet and contends that he should be entitled to cross examine her.  As stated above, the governing Tenth Circuit law does not require an exact calculation of actual loss.  *United States v. Davis*, 60 F.3d 1479, 1485 (10th Cir. 1995).  Through the United States' proffer of evidence, it is apparent that R.R. has done the best itemized estimation she could do under the circumstances.  Cross examination would lead

only to responses that she did the best she could.  The court concludes that R.R.'s spreadsheet is a reasonable way to determine and resolve the uncertainties in connection with her loss "with a view toward achieving fairness to the victim." *Id.*  Therefore, the court awards restitution to R.R. in the amount of $18,193.00.

### C.  T.K. and L.V.

T.K. and L.V. are the parents of  G.K. and C.V., respectively, who purchased Fentanyl from Shamo and died with Fentanyl in their systems soon after receiving the drugs in the mail. Shamo argues that the court cannot find that Shamo was the proximate cause of T.K.'s and L.V.'s harm.  Relying on this court's decision in *United States v. Hunter*, 2008 U.S. Dist. Lexis 443, at *13 (D. Utah Jan. 3, 2008), Shamo asserts that Shamo's actions are too factually and temporally attenuated to establish proximate cause.  In *Hunter*, the defendant sold a gun to a coworker he reasonably believed to be a minor.  The defendant had no knowledge as to the minor's intentions with the gun. And tragically, eight months later, the minor used the gun in a shooting.  The court found that the parents of the shooting victim were not proximately harmed by the defendant's sale of the firearm to a minor.  *Id.*

The present case is distinguishable from *Hunter*.  *Hunter* involved an intervening actor–the shooter.  Whereas, in this case, Shamo and his enterprise manufactured, sold, and shipped the drugs directly to G.K. and C.V.  The jury convicted Shamo of the drug sales to G.K. and C.V. Moreover, this case does not present a significant temporal delay like there was in *Hunter*.  Both G.K. and C.V. died within days, not months, of receiving the drugs from Shamo.  Also, in *Hunter*, the defendant did not know the minor shooter's intentions with the gun when he sold him the gun. However, the evidence in this case demonstrates that Shamo knew the dangers of overdosing

4

associated with the pills he was creating and selling.  He experimented on the recipe with a local

drug dealer.  He knew customers were getting sick and even searched obituary records.  Shamo

also watched a DEA video on the dangers of Fentanyl to law enforcement and used personal

protective equipment when he was manufacturing the Fentanyl pills.  There is ample evidence that

Shamo foresaw that the Fentanyl pills he was selling could kill customers.

   Shamo contests whether the drugs he sold were the proximate cause of G.K.'s and C.V.'s

deaths.  But there is a record of the drug purchases on Shamo's Pharma-Master site, G.K. and C.V.

both had Fentanyl in their system when they died, and the police reports for both deaths indicate

that neither man had any other known source of obtaining Fentanyl.  In addition, Fentanyl was the

only substance in either man's system that would cause death.  The United States' expert at trial

explained how Fentanyl is the actual cause of death in overdoses involving a mix of substances,

such as alcohol and cocaine, in someone's system.  While the jury was hung on the death resulting

charge brought at trial, the standard for awarding restitution is the lesser standard of a

preponderance of the evidence.  The court concludes that the United States has met the

preponderance of the evidence standard with respect to G.K.'s and C.V.'s deaths.  Therefore, the

court concludes that T.K. and L.V. are entitled to restitution.

   Finally, Shamo appears to admit that T.K. is entitled to G.K.'s funeral expenses and lost

income in the event that the court found G.K.'s death proximately caused by Shamo's distribution

of Fentanyl to G.K.  Funeral expenses and lost income are specifically named in the statute.  18

U.S.C. § 3663(b)(2), (3).  But Shamo contests whether L.V. is entitled to repayment of educational

loans she made to C.V.  L.V. does not seek restitution for L.V.'s funeral expenses or the

$40,000.00 she gave L.V. for his education.  The United States argues that L.V.'s limited request

for repayment of the educational loans is reasonable and could fit within the lost income category

of restitution.  While it is apparent that L.V. limited her request for restitution, the repayment of

educational loans is not as foreseeable of an expense as funeral expenses.  However, the court

agrees that C.V.'s lost income as a result of his death does prevent him from paying back his

educational loans.  The United States submits that the amount of the loans, $29,698,57, is roughly

the amount of a year's worth of wages at minimum wage in Washington where C.V. lived.  While

the court has some concerns over the imprecise nature of the United States' request, the court is

mindful of the directive to resolve uncertainties with a view toward achieving fairness to the

victim.  The court, therefore considers L.V.'s request reasonable in light of the total amount of

restitution potentially available to L.V.

Accordingly, the court awards restitution to T.K. in the amount of $24, 625.00 and to L.V.

in the amount of $29,698.57.

## CONCLUSION

Based on the above reasoning, the United States' Motion for Restitution [ECF No. 360] as

a part of Defendant Aaron Michael Shamo's Judgment is GRANTED.  Shamo is ordered to pay

restitution in the amount of $47,226.08 to United Insurance Group, $12,724.32 to J.L.,  $18,193.00

to R.R., $24,625.00 to T.K., and $29,698.57 to L.V.  The court will enter a new Judgment

reflecting these restitution obligations.

DATED this 30th day of November, 2020.

BY THE COURT:

DALE A. KIMBALL
United States District Judge

6