1              IN THE UNITED STATES DISTRICT COURT

2                       DISTRICT OF UTAH

3                       CENTRAL DIVISION

4

5   UNITED STATES OF AMERICA,    )

6              Plaintiff,        )

7     vs.                        )  Case No.  2:16-CR-631-DAK

8   AARON MICHAEL SHAMO,         )

9              Defendant.        )

10   _____)

11

12          BEFORE THE HONORABLE DALE A. KIMBALL

13        --------------------------------------

14                     August 28, 2019

15                       Jury Trial

16             Jury Instruction Conference

17

18

19

20

21

22

23

24   REPORTED BY: Patti Walker, CSR, RPR, CP    801-364-5440

25   351 South West Temple, #8.431, Salt Lake City, Utah  84101

```
 1                     A P P E A R A N C E S

 2

 3

 4   For Plaintiff:              Michael Gadd
                                 Vernon G. Stejskal
 5                               Kent A. Burggraaf
                                 U.S. ATTORNEY'S OFFICE
 6                               111 South Main Street, #1100
                                 Salt Lake City, Utah  84111
 7

 8
     For Defendant:              Gregory G. Skordas
 9                               Kaytlin V. Beckett
                                 SKORDAS & CASTON LLC
10                               560 South 300 East, #225
                                 Salt Lake City, Utah  84111
11

12                               Daryl P. Sam
                                 DARYL P SAM PLLC
13                               5955 S. Redwood Road, #102
                                 Salt Lake City, Utah  84123
14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1   SALT LAKE CITY, UTAH; WEDNESDAY, AUGUST 28, 2019; 10:00 A.M.
 2                            PROCEEDINGS
 3              THE COURT:  Good morning.
 4              Now everybody isn't here.  You don't care about
 5   that, do you?
 6              MR. SKORDAS:  No.  We're ready to go.
 7              MR. GADD:  We don't care.  We've got some clerks
 8   from the building from other judges here.
 9              THE COURT:  They must be gluttons for punishment
10   if they want to witness an instruction conference.
11              MR. GADD:  Is there a way we could give them an
12   electronic copy of what we're going to go through?
13              MS. TOSCANO:  I can e-mail it to you right now.
14              MR. GADD:  If you e-mail it to me, I'm happy to
15   walk back there and let them plug in their e-mail addresses
16   on my phone and then we'll get them a copy.
17              THE COURT:  We have for the United States
18   Mr. Michael Gadd and Mr. Vernon Stejskal, and for the
19   defendant Mr. Gregory Skordas and Ms. Kaytlin Beckett.
20              All right.  What's the first proposed jury
21   instruction anybody has a problem with, or a suggestion
22   about?
23              Don't all speak at once.
24              MR. GADD:  Twenty-nine.
25              THE COURT:  Okay.  I have a question about one of
```

1    my own here before then.

2            So, Mr. Skordas.

3            MR. SKORDAS:  Yeah.  Jury Instruction No. 12.

4            THE COURT:  Twelve.

5            MS. BECKETT:  My only concern on that one,

6    Your Honor, is that it only lists three individuals as

7    potentially informants.  I know we hadn't really talked

8    about this and classifications there on how we wanted to

9    classify those individuals.  I'm just not sure if that's

10   clear enough that it only lists three individuals as

11   informants because I think that there is more information

12   provided by others as well.

13           THE COURT:  Well, who did you think should be

14   added?

15           MS. BECKETT:  I would suggest that a couple of the

16   other co-conspirators who testified as well.

17           THE COURT:  I'm having trouble hearing you.

18           MS. BECKETT:  I would suggest that some of the

19   other co-conspirators that testified during this trial are

20   informants as well.  And I know the time line on Jensen,

21   Gleave, and Mr. Gygi is earlier than some of them, but I

22   think that there's cause to believe that some of those other

23   parties were also informants.

24           MR. GADD:  When we were trying to parse out who

25   belongs in which category, we looked for people that had

1    some sort of a more formal role as an informant.  So

2    Mr. Jensen, Ms. Gleave, Mr. Gygi, everybody else, you know,

3    they start cooperating, but it's at the date of the

4    takedown, the date of Mr. Shamo's arrest.  That's kind of

5    how we split it.

6             In Mr. Gygi's case, we put him in both categories,

7    informant, co-defendant, accomplice, witness.  If it's just

8    a distinction in terms, I don't have strong feelings about

9    how we label people.

10            THE COURT:  Ms. Beckett.

11            MS. BECKETT:  I understand that distinction,

12   Your Honor.  I just think that there was some information

13   provided by particularly Ms. Tonge and Ms. Bustin that could

14   be deemed informant.

15            THE COURT:  So you would add Tonge, Bustin, and

16   whom?

17            MS. BECKETT:  Those two particularly.

18            THE COURT:  Add Tonge and Bustin.

19            What's the next number?

20            MR. GADD:  I'm still on 29.

21            THE COURT:  What's the next number for defense?

22            MR. SKORDAS:  Number 30, Judge.

23            THE COURT:  I want to talk about 27 for a minute.

24   I want to criticize my own instruction here.  How am I

25   supposed to read that?

1          MR. GADD:  Could we not?  Could we say Fentanyl as

2     you see before you?

3          MR. SKORDAS:  Can't you just say Fentanyl is a

4     controlled substance within the meaning of the law?

5          THE COURT:  Can we just say that?  Do you have any

6     objection to that?

7          MR. GADD:  I don't because I don't recall anywhere

8     else in the instructions where we've used the chemical name.

9     The trouble that you run into with Fentanyl in particular is

10    when you look at 21 United States Code 841, and as it's

11    going through the types of drugs for which there are minimum

12    mandatory sentences based on the quantity, it uses a

13    chemical name.  So that's why we always pair it together so

14    that we're putting defendants on notice, especially in

15    counts where we're seeking a mandatory minimum sentence.

16         THE COURT:  So these are the chemical designations

17    for Fentanyl?

18         MR. GADD:  Yeah, that's the --

19         THE COURT:  I think I will leave it and just say

20    that.

21         MR. GADD:  Okay.  Thank you.

22         THE COURT:  Can you live with that?

23         MR. SKORDAS:  Yes.

24         MS. BECKETT:  Yes.

25         THE COURT:  All right.  29.  What is your problem?

1          You didn't mention 29.

2          MS. BECKETT:  No, Your Honor, we did not.

3          MR. GADD:  Most of these are stylistic.  So the

4    third paragraph down --

5          THE COURT:  Well, then they're Susie's fault.

6          MR. GADD:  If the Court saw what we gave her to

7    work with, the fault would not be placed with her.

8          THE COURT:  Well, I glanced at it.  All right.

9          MR. GADD:  We're trying to do our best with what

10   proves to be a tricky pattern instruction.

11         So the third paragraph down where we start first,

12   it says the defendant violated the Controlled Substances Act

13   as charged, and then it says the words in the predicate

14   offenses charged, and I wonder if we cut out those five

15   words, in the predicate offenses charged, if we cut out just

16   those five, it might read a little more clearly.  So if I

17   were to cut those out, it would read like this:  Violated

18   the Controlled Substances Act as charged in the list of

19   underlying violations to Count 1.

20         THE COURT:  Do you have any objection to that?  It

21   does read better, makes more sense, and I don't think it

22   changes the meaning.

23         MS. BECKETT:  I would agree, and I actually think

24   that that's probably a change you want to make throughout

25   some of these instructions because it has that same

1    language.  That might be helpful.

2           THE COURT:  Well, you've got to point them out.

3           Do you have any problem with that?

4           MS. HINDLEY:  No.  It makes it closer to the

5    pattern instruction.

6           THE COURT:  As charged, strike in the predicate

7    offenses charged.

8           MR. GADD:  And I know why we had it in there.  I

9    just -- I don't know.  I'm flip-flopping.

10          THE COURT:  All right.  What's your next point?

11          MR. GADD:  On the next paragraph down -- so it's

12   second -- it starts out with such violation was part of.

13   That is from the pattern instruction and it makes sense if

14   the first paragraph's a little different.  But since we

15   don't refer to a single violation in the first paragraph, I

16   wonder if it would be more clear to the jury if instead of

17   the words such violation was a part of, we instead went

18   with, second, the defendant engaged in a continuing series.

19   So we're just kind of changing the subject there from

20   violation to defendant so that it will match how we've

21   structured the first paragraph.

22          THE COURT:  Ms. Beckett.

23          MS. BECKETT:  Could you read for me what that

24   would sound like, just to clarify?

25          MR. GADD:  Yes, for sure.

```
 1              So under my proposal it would sound like this:
 2    Second, the defendant engaged in a continuing series of at
 3    least three violations.
 4              THE COURT:  Of at least three violations.  It
 5    reads better.
 6              MS. BECKETT:  Correct.  I have no problem with
 7    that.
 8              THE COURT:  All right.  We'll do that.
 9              Have you got that, Susie?
10              MS. HINDLEY:  Yes.
11              MR. GADD:  In that same paragraph, in the third
12    sentence down -- so five rows down --
13              THE COURT:  You must?
14              MR. GADD:  -- starting with you must unanimously
15    agree, at some point in here you have to tell the jurors
16    it's got to be three.  And what we've done is we've told
17    them in the first sentence it's got to be three.  But I
18    wonder if we should repeat it in this sentence.  So my
19    suggestion is we -- and this, I think, is the language out
20    of the pattern.  We just moved it up, I think, to give it
21    emphasis, to make it clearer.  But I wonder if actually
22    saying it twice would hit us in our clarity.  So under my
23    proposal it would read, you must unanimously agree on which
24    of at least three of these underlying violations the United
25    States --
```

```
 1                 THE COURT:  That is clearer, I think, and it
 2   certainly doesn't hurt the defendant.
 3                 MR. GADD:  I would think it would help him.
 4                 MS. BECKETT:  No objection.
 5                 MR. GADD:  And then I feel silly even saying this
 6   part, but --
 7                 THE COURT:  That makes us even more anxious to
 8   hear what you're going to say.
 9                 MR. GADD:  I haven't been able to decide if we
10   should capitalize special verdict form or leave it -- and
11   I'm not sure I have a preference as long as we do it the
12   same throughout.
13                 MS. HINDLEY:  I think you should capitalize it so
14   they know it's another document.
15                 THE COURT:  We have uniformly done that.
16                 MR. GADD:  Okay.  So if that's the case, in the
17   first paragraph, I think we capitalize it up in that one.
18                 MS. HINDLEY:  Yes.
19                 MR. GADD:  And I'm happy with keeping it
20   capitalized.
21                 THE COURT:  Yes.  It should be capitalized up in
22   the first.
23                 No objection to that, I suppose.
24                 MS. BECKETT:  No.  The English teacher in my likes
25   that.
```

```
 1              THE COURT:  All right.  Next.

 2              MR. GADD:  Thirty.  So there's a question in 30 in

 3    between the first and second.

 4              THE COURT:  You had 30 as well, right?

 5              MS. BECKETT:  Correct, and I believe it's the same

 6    as you have.

 7              THE COURT:  Okay.

 8              MR. GADD:  So the statute does not require,

 9    doesn't even really allow us to prove the amount of

10    Alprazolam, which is why we've left it out of there.

11              THE COURT:  So that answers our question, what

12    about the amount of Alprazolam?

13              MR. GADD:  Yes, Your Honor.

14              THE COURT:  Okay.  That's not a bad answer

15    actually.

16              All right.  Was that your issue?

17              MR. GADD:  That was it.

18              THE COURT:  What was yours?  The same thing?

19              MS. BECKETT:  Same.

20              THE COURT:  Okay.

21              Next one.  What's the next problem?

22              MR. SKORDAS:  Thirty-one.

23              THE COURT:  Thirty-one.  I was hoping it might be

24    48 or something.

25              Thirty-one.  How come I can't find it?
```

1           MS. BECKETT:  My concern actually is kind of
2    collateral to this because this particular instruction deals
3    with the but-for cause of death, which I realize to some
4    people may be clear, but I think we need a stand-alone
5    instruction that deals with the but-for cause, and I don't
6    know that we've addressed that anywhere.

7           THE COURT:  Let me look at this here.  All right.
8           The but for is not in 31?

9           MS. BECKETT:  The last paragraph.

10          MS. HINDLEY:  She wants us to define what but for
11   means.

12          THE COURT:  I see.

13          MS. BECKETT:  And I don't really have a resolution
14   on this, but I think the phrase the victim's use of the drug
15   is a but-for cause of death, I hate proposing a problem
16   without a potential resolution, but I just don't think that
17   phrasing actually accurately describes the count or the case
18   law that deals with it.

19          MR. GADD:  I looked at this pretty closely in
20   preparing our proposed instructions.  I tried my hand
21   actually at writing a definition.  I looked for other
22   circuits or even other cases where they had a definition
23   that had been tested on appeal.  I talked to other
24   prosecutors who charge cases like these.  And the consensus
25   I got in speaking with others, and also doing my own

1   research, is that there's nothing out there I can point the

2   Court to, and it's problematic to be the first person to

3   suggest a definition that goes into instructions.  So I kind

4   of came to the conclusion, in looking at all that, that I

5   think the language just is what it is, but for.

6           THE COURT:  What about that is the death would not

7   have happened but for?

8           MR. GADD:  My memory --

9           THE COURT:  Maybe that doesn't -- repeat it three

10  or four times.

11          Do you have suggested language?

12          MS. BECKETT:  I don't, Your Honor, but my

13  concern -- and it comes largely from Dr. Hail's testimony

14  because she testified several times using the phrase but

15  for, I'm familiar with the but-for cause, I'm familiar with

16  the but-for cause.  And I think that if we essentially

17  say -- as long as it's but for and then tell the jury

18  Dr. Hail said it's but for without explaining what that

19  actually means, I think that creates a problem.

20          THE COURT:  Apparently nobody has found a pattern

21  instruction or a court that has used this in any way that

22  they can derive a useful instruction.

23          MS. BECKETT:  Correct, and I recognize that that

24  is problematic.  It's my understanding that some criminal

25  courts have actually looked more towards a civil instruction

```
 1   to define the but-for cause in these types of cases, and I
 2   don't know that there is something, that I have come up,
 3   that would work.  But I think that it needs a stand-alone
 4   instruction based on the testimony of Dr. Hail.
 5           MR. GADD:  The last sentence of the current
 6   version of the instruction starting with to secure a
 7   conviction, that was pulled from the Supreme Court case that
 8   got us in this mess, Burrage.
 9           THE COURT:  Did what?
10           MR. GADD:  The Supreme Court case -- and I say
11   this tongue in cheek -- that got us into this mess, that's
12   Burrage, and I was comfortable with it because it came right
13   out of the case.
14           I worry about trying to define it any further than
15   that.  I really do.
16           THE COURT:  I suppose we could take this little
17   paragraph and make it its own instruction, the next
18   instruction.  Would that make you happier?
19           MS. BECKETT:  That would make me happier, yes.  I
20   do think that there does need to be clarifying language.  I
21   hate to be the one to beat a dead horse, but I don't think
22   that just saying but-for cause is clear enough.
23           THE COURT:  But apparently nobody has helped us in
24   a pattern or a case.
25           MS. BECKETT:  There are civil instructions, it's
```

1    my understanding, that address that issue, that look to the

2    but-for cause.  But because the Burrage case is essentially

3    fairly new in terms of usage, I --

4           MR. GADD:  There are examples in -- however you

5    say Burrage or Burrage -- I mean they go through a series of

6    examples, as I recall.  I didn't think they were especially

7    helpful, but that's at least language that came from the

8    Supreme Court.  At the end of the day, I think --

9           THE COURT:  Let's do this.  We won't be here the

10   whole morning, I don't think.  So let's say by 2:30 or so

11   you each propose something, send it to Susie -- propose

12   something or say that you're happy with what's here.

13          MS. BECKETT:  We can do that.

14          THE COURT:  I guess one thing I'm willing to do

15   before we end this conference is to perhaps put it in a more

16   prominent position by making it the new number 32 and

17   renumbering everything else.  I am willing to do that.

18          Do you have any objection to that.

19          MR. GADD:  No, sir.

20          THE COURT:  Because I will at least do that.  And

21   then we'll look at any language anybody suggests.

22          MS. BECKETT:  Thank you.

23          MS. HINDLEY:  Do you want to refer to him by his

24   initials like he's been referred to during the case, like

25   RK, or do you want to keep it his name?

```
 1              THE COURT:  Does that matter?  We've talked about
 2    a victim and we've talked about RK.
 3              MR. GADD:  I'm happy with either.
 4              THE COURT:  Okay.  I guess it doesn't matter.
 5              MS. BECKETT:  I would suggest RK.
 6              THE COURT:  All right.
 7              What's the next question?
 8              My respect for Mr. Burggraaf and Mr. Sam has gone
 9    way up for somehow managing to avoid this hearing.
10              MR. GADD:  My next one is 37.
11              THE COURT:  Do you have one before that,
12    Ms. Beckett?
13              MS. BECKETT:  No, Your Honor.
14              THE COURT:  Thirty-seven.
15              MR. GADD:  It seems like in other instances where
16    there was essentially two things we prove, first guilt, and
17    then if guilty, a quantity, we split those, and I thought
18    for consistency maybe we should split this one after the
19    third element.  And then I think what we've typically done
20    is made that fourth element the next instruction in the
21    series.
22              THE COURT:  Ms. Beckett.
23              MS. BECKETT:  That makes sense, Your Honor.
24              THE COURT:  Do you understand what he's talking
25    about?
```

```
 1              MS. HINDLEY:  Yes.

 2              MR. GADD:  And I don't have a preference where the

 3   definition that falls below that, the possession with intent

 4   to distribute definition, I don't have a preference where

 5   that goes.  It probably makes sense to keep it with the main

 6   body.

 7              THE COURT:  Okay.  Next question.

 8              MS. BECKETT:  Just the same issue with Instruction

 9   39, the but for.

10              THE COURT:  Same issue with 39.

11              Mr. Gadd, do you agree?

12              MR. GADD:  It's also the death resulting count.

13   So I'm planning to respond at 2:30 on both of those.

14              And as far as setting it off into, you know, that

15   last sentence out of Burrage, setting it off into an

16   additional count, I don't know if it makes sense to repeat

17   it that way, but I don't have a preference.

18              THE COURT:  We have a stand-alone once.  We

19   already have a stand-alone that's the new 32.  So I think

20   we'll just leave this one.

21              Next.

22              MR. GADD:  I have 41.

23              THE COURT:  Forty-one.

24              Did you have any before that, Ms. Beckett?

25              MR. SKORDAS:  No, Your Honor.
```

1          MR. GADD:  On 41, the fifth element ends with the

2    words serious adverse health consequences.  The statute from

3    which that's taken, Title 21 United States Code Section 337,

4    and then subsection (b)(7), it adds four additional words,

5    and my request is that we stick those in there because

6    that's part of what we've been aiming to prove in the case.

7          THE COURT:  This was your suggestion originally,

8    wasn't it?  So you're editing yourself.

9          THE CLERK:  No.  We took it out based on

10   defendant's objections.

11         THE COURT:  Oh, all right.

12         MR. GADD:  So these four words would be -- I'll

13   just read it all the way through.  Fifth, such adulteration

14   of the drug had a reasonable probability of causing serious

15   adverse health consequences or death to humans.

16         So it's from the statute.  It's been a major

17   emphasis in our case in chief in order to prove that point,

18   and my request is that it be in there.

19         THE COURT:  It's kind of hard to argue against the

20   statute, isn't it?

21         MS. BECKETT:  Correct, Your Honor.  I don't think

22   that that's a major issue or point of contention.

23         THE COURT:  All right.  Next.

24         MR. GADD:  My next is 48.

25         THE COURT:  Do you have one before then?

```
 1              MS. BECKETT:  No, Your Honor.

 2              THE COURT:  Forty-eight.

 3              MR. GADD:  So in the second paragraph the Court is

 4     explaining to the jury the special verdict form and

 5     indicates in the second sentence this form --

 6              THE COURT:  No.  No.  The Court is not going to

 7     explain the special verdict form.  The Court is going to

 8     provide the jury with a special verdict form and you lawyers

 9     are going to try to explain it to them when you do your

10     closing arguments.  I want all that on the record the Court

11     will provide you with, okay?

12              MR. GADD:  Yes, sir.  I'm able to smile because

13     it's Mr. Stejskal's responsibility to explain that terrible

14     verdict form.

15              THE COURT:  I see him shaking his head.

16              Go ahead.

17              MR. GADD:  In the second sentence it indicates

18     this form contains two determinations for Counts 1, 2, 4

19     and 5.  And that's true, but Count 1 actually has three

20     determinations.  So part of me thinks --

21              THE COURT:  So it should say this form contains

22     three determinations for Counts 1, and two for Counts 2, 4

23     and 5.

24              MR. GADD:  Yes.  And if that's the clearest way to

25     explain it, I think what the Court has proposed makes sense.
```

```
 1              THE COURT:  Did you get that, Susie?

 2              THE CLERK:  So it would read this form contains

 3    three determinations for Count 1, and two determinations for

 4    Counts 2, 4 and 5?

 5              THE COURT:  Right.

 6              MR. GADD:  Yes.

 7              THE COURT:  Thank you.

 8              Next?

 9              The next are stock, aren't they?

10              MR. GADD:  I don't have anything until almost the

11    end of the special verdict form.

12              THE COURT:  Do you?

13              MS. BECKETT:  No, Your Honor.

14              THE COURT:  Mr. Skordas.

15              MR. SKORDAS:  If you go back to 48 --

16              THE COURT:  Well, I could.  I don't really want

17    to, but I guess I will.

18              MR. SKORDAS:  I think we just need to finish the

19    paragraph.

20              THE COURT:  Just a minute.  Let me get back there.

21              MR. SKORDAS:  I don't want to complicate it.

22              THE COURT:  Forty-eight.  I'm there.

23              MR. SKORDAS:  So we just mentioned that it's three

24    determinations for Count 1.

25              THE COURT:  We did.
```

1          MR. SKORDAS:  Then you go down to the --

2          THE COURT:  Well, that's right.  Then it says the

3    first determination.

4          MR. SKORDAS:  That's true.

5          THE COURT:  That sentence is okay, right?

6          MS. HINDLEY:  Wouldn't we have to say you do not

7    need to proceed to the subsequent question regarding the --

8          MR. SKORDAS:  Right.

9          MS. HINDLEY:  Maybe put the S in parentheses.

10         MR. GADD:  Subsequent makes sense there.  I think

11   you're right.

12         MR. SKORDAS:  Subsequent questions.

13         MS. HINDLEY:  Put the S in parentheses.

14         THE COURT:  Because it's 2 and 3, yeah.

15         Thank you.

16         MR. SKORDAS:  And the last sentence should have

17   the same thing, subsequent questions instead of the

18   second -- or subsequent determinations.

19         THE COURT:  Subsequent determination or

20   determinations.  All right.

21         When I first came over here, which amazingly

22   enough has now been nearly 22 years, I used to instruct

23   after the closing arguments.  But for the last 15 years or

24   so, I've been instructing before.  I think that goes better.

25   Do you have objection to that?

 1          MR. SKORDAS:  No.  That's what I had expected.

 2          THE COURT:  Then they have the -- I was afraid

 3  they would read the instructions and not pay attention to

 4  closing arguments.  That doesn't happen in my experience,

 5  and sometimes it's helpful for them to have.  And you can

 6  refer to them during your closings, if you want to.

 7          All right.  Special verdict form.

 8          MR. SKORDAS:  Your Honor, in that respect,

 9  referring to them, would that also include sort of

10  highlighting -- not that I've done any preparation for my

11  closing yet -- if I did a --

12          THE COURT:  You get high marks for candor.

13          MR. SKORDAS:  Get my wife's attention for a couple

14  of hours to help me with this.  But if we had to

15  highlight -- let's say we did a PowerPoint.

16          THE COURT:  If you want to highlight something,

17  you can, from instructions, or the verdict form for that

18  matter.

19          MS. HINDLEY:  When I get the final version done, I

20  will e-mail them out to you so that you've got them in a

21  Word version.

22          MR. SKORDAS:  Thank you so much.  All right.

23          THE COURT:  And that will be -- we're going to get

24  some suggestions by 2:30.  So we can still get them out

25  today, right?

```
 1              MS. HINDLEY:  Yeah.

 2              THE COURT:  Maybe two o'clock.  Two o'clock.  I

 3      just moved the deadline up for the --

 4              MR. GADD:  I can answer now.  I've looked at this.

 5      I don't think there's a definition we can use.  So I can

 6      write that in an e-mail or I can just tell you.  Just leave

 7      it as is.

 8              THE COURT:  He admits he can't improve on it.

 9      We'll see if they can.

10              All right.  Special verdict form.  What page?

11              MR. GADD:  On page 13, Count 9.

12              THE COURT:  Page 13, Count 9.

13              MR. GADD:  I caught a mistake I made.  I forgot to

14      put a space in between the word count and the number 9.

15              THE COURT:  I see that.

16              MR. GADD:  But other than that, I think we're good

17      to go.

18              THE COURT:  Special verdict form.  Counsel?

19              MS. BECKETT:  I mean good luck, but yeah, we don't

20      have any objection.

21              THE COURT:  Thank you for your help on these.

22              And do you have any idea how long your closings

23      will take?

24              Mr. Stejskal.

25              MR. STEJSKAL:  Should I say no and get some points
```

1    for candor there too?

2            THE COURT:  Make your best guess.  I won't hold

3    you to it.  It's been a long trial.  I'm not even going to

4    impose any limits on you.

5            MR. STEJSKAL:  Thank you.

6            Sometimes brevity is good.  I'm trying to refine

7    down to 90 minutes to possibly two hours.  Again, no

8    guarantees, but that's what I'm working on.

9            THE COURT:  All right.

10           Mr. Skordas, do you have any idea?

11           MR. SKORDAS:  I would be much shorter than that.

12   I don't think we'll go an hour.

13           THE COURT:  Now when you say 90 minutes, are you

14   going to do one too?

15           MR. GADD:  Yes, a rebuttal.

16           THE COURT:  A rebuttal.

17           MR. GADD:  It will be pretty short.

18           THE COURT:  Yeah.  Rebuttals should be short.

19           I'll take it off his two hours.  No.

20           So tomorrow will probably go like this.  We'll

21   start around 8:30.  I think it will take me at least an

22   hour, and maybe an hour and 15 minutes to read these

23   instructions.  And then we'll take a break, and then a break

24   after yours, and then probably not break again until after

25   yours and your rebuttal.  That's probably the way it will

1    go.

2              Questions, comments about that?

3              MR. SKORDAS:  That sounds good.

4              THE COURT:  All right.  I appreciate having good

5    lawyers in here, so I appreciate you folks.  We'll see you

6    at 8:30 tomorrow.

7              MR. GADD:  Thank you, Your Honor.

8              THE COURT:  Oh, wait a minute.  Wait a minute.

9              MR. GADD:  Thank you.  Good catch.

10             THE COURT:  This came from --

11             MR. GADD:  I had one job here and I totally blew

12   it.

13             THE COURT:  Do you have any objection to this?

14             MS. BECKETT:  I have multiple.  It was just handed

15   to me.  I haven't been able to read the government's full

16   response to our motion for a mistrial, which is where I

17   believe this came from, but I don't think that it is

18   adequate and I think it does more to draw attention to the

19   issue as opposed to limiting it.

20             THE COURT:  So you'd rather do without it?

21             MS. BECKETT:  I mean I think our motion was clear

22   in how we'd like to deal with it, Your Honor, but if the

23   Court is inclined to --

24             THE COURT:  But you're assuming I'm going to grant

25   a mistrial.

```
 1              MS. BECKETT:  I understand that.  That's a bold
 2     assumption on my part.  There were multiple individuals that
 3     it referred to.  I don't think there was just one.  I
 4     believe there were three.
 5              THE COURT:  There were more than one, weren't
 6     there?
 7              MR. GADD:  So the sidebar happened with enough
 8     time that I didn't get into asking questions about those
 9     other deceased customers.
10              MS. BECKETT:  The context in which those questions
11     were asked led to the exact same inference, without a doubt,
12     Your Honor.  They were asked in the same capacity and the
13     same way.  I don't think --
14              THE COURT:  So if I'm going to give it, you would
15     want the other references?
16              MS. BECKETT:  I would need all of them in there,
17     and I think that it needs to be --
18              THE COURT:  Are there three more?
19              MR. GADD:  And I'm happy to have those put in.
20     I'm happy to update this and submit it by e-mail to
21     everyone.
22              I'll tell you, Ms. Beckett is correct in that this
23     is part of our response to their motion for mistrial and the
24     supplement they filed last night.  That's actually where
25     Mr. Burggraaf is -- or was, if he's behind me now.
```

1          He's not.

2          He's finalizing that.  But because we were talking

3     about instructions, I didn't want to have this entire

4     conference and then propose this once everybody left the

5     room.  I'm happy to adjust the language.

6          We had anticipated an instruction like this way

7     back in May of 2019 as we all discussed how to handle what

8     are sensitive issues.  If the defense doesn't want it now,

9     we, of course, won't get in the way.  We're trying to help,

10    not hurt.  If we want to add those three initials, I'm happy

11    to add those.

12         MS. BECKETT:  I think the bigger problem is that

13    this particular instruction draws more attention to an issue

14    that the government has already decided they wanted to draw

15    a significant amount of attention to.  So it would be our

16    request to not have it and not draw more attention to the

17    issue itself.

18         THE COURT:  All right.  We won't put it in.

19         MR. GADD:  And then if I could raise one

20    additional.  Mr. Stejskal caught something as we've been

21    going through these this morning.  It's a minor change, but

22    since we're still on the record, it's in proposed

23    Instruction 36.

24         THE COURT:  Thirty-six.

25         MR. GADD:  On the first line of 36 -- just give

 1   these guys a moment -- it indicates that for Counts 2, 3

 2   and 4 there's going to be kind of two parts, first guilt,

 3   and then if guilty, quantity.  I think we could cut the 3

 4   out of that.  Since 3 was an Alprazolam count, we don't

 5   worry about quantity for Alprazolam.  So this suggestion is

 6   just that that first line read, if you find beyond a

 7   reasonable doubt that the defendant is guilty of Counts 2

 8   and 4, and also in the list of underlying violations, and

 9   then from there.  So we just cut the 3 out, but that's all.

10            THE COURT:  Any objection to that?

11            MS. BECKETT:  No, Your Honor.

12            MR. GADD:  Thank you.

13            THE COURT:  Thank you, all.

14            Welcome, Mr. Burggraaf.

15            MR. BURGGRAAF:  Sorry for my tardiness.

16            MR. GADD:  Just as you were coming in, they

17   decided they don't want it.

18            MR. BURGGRAAF:  Oh, okay.

19            MR. GADD:  All his hard work.

20            I think that's all we have, and I'm planning to

21   talk about exhibits when we conclude.

22            THE COURT:  All right.  Do I need to be here for

23   that?

24            MR. GADD:  I don't believe so.

25            THE COURT:  Okay.  But I could sit here and sleep

 1   and get court time credit for it.

 2           All right.  We'll be in recess.  You'll figure out

 3   which exhibits have been admitted.  And if there's any

 4   problem on that, I can fix that in the morning, I suppose.

 5           MR. GADD:  Yes, sir.

 6           THE COURT:  Court will be in recess.  Thank you

 7   very much.

 8           MR. GADD:  Oh, Your Honor.  This is the third

 9   time.  I'm sorry.

10           THE COURT:  I'm having a hard time getting off the

11   record.

12           Yes.

13           MR. GADD:  I had a chance, just briefly, to look

14   at the defendant's written motion for a judgment of

15   acquittal.  Would the Court prefer we just address it orally

16   right now, put something in writing?

17           THE COURT:  Put something in writing when you can

18   get to it.

19           MR. GADD:  If I can get to it while the jury

20   deliberates, would that be okay?

21           THE COURT:  Sure.

22           MR. GADD:  Thank you.

23           THE COURT:  Thank you, all.  We'll be in recess

24   until tomorrow morning at 8:30, except for the exhibit

25   issue.

1              Do you need that on the record at this point?

2         MS. TOSCANO:  No.

3         THE COURT:  We'll put anything on the record in

4    the morning.

5              There was some question about -- there's an

6    exhibit with Luke Paz's plea agreement?

7         MS. BECKETT:  Oh, correct, Your Honor, and that

8    does deal with our motion for mistrial as well.  And the

9    government has listed that as a redacted document.  But it's

10   clear from the minor redaction made in that document that

11   they are referencing a large number of overdose deaths as

12   opposed to just removing the section that deals entirely

13   with overdose deaths.  So I think if that is going before

14   the jury, it needs to have that entire section removed.

15        THE COURT:  Shouldn't it be removed?

16        MR. BURGGRAAF:  And, Your Honor, my tardiness was

17   because I was responding to their motion for a mistrial,

18   including that specific issue.  We're completely happy to

19   remove the page altogether or redact the page altogether.

20             It's interesting enough that the defense actually

21   proposed the same exhibit back in May and we just decided to

22   get it in all under the government's exhibits.  But theirs

23   wasn't redacted at the time.  But we're happy to.  I think

24   it's probably more ideal to redact the page so they don't

25   question why there's a page missing.

1          MS. BECKETT:  I don't know that an entire page

2     redaction is necessary.  Just the paragraph that deals with

3     the overdose deaths is our concern.

4          THE COURT:  Redacted with the overdose deaths is

5     removed from the Paz exhibit.  Okay.

6          MR. GADD:  We'll do that and we'll resubmit that

7     exhibit for the jury.

8          THE COURT:  Thank you.

9          (Whereupon, the trial was continued to Thursday,

10    August 29, 2020 at 8:30 a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                   C E R T I F I C A T E

2

3

4          I hereby certify that the foregoing matter is

5   transcribed from the stenographic notes taken by me and is a

6   true and accurate transcription of the same.

7

8

9

10

11

12

13

14

15

16  PATTI WALKER, CSR-RPR-CP      DATED: 12-14-2020
    Official Court Reporter
17  351 South West Temple, #8.431
    Salt Lake City, Utah  84101
18  801-364-5440

19

20

21

22

23

24

25
```